UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| BUTERA & ANDREWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06CV00647 (RBW) |
| | ) | |
| INTERNATIONAL BUSINESS MACHINES | ) | |
| CORPORATION, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## DEFENDANT IBM'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant International Business Machines Corporation ("IBM"), hereby moves this Court for an Order dismissing this case with prejudice (the "Motion"). Because plaintiff Butera & Andrews has failed to plead any set of facts upon which relief could be granted, its complaint should be dismissed under Federal Rule 12(b)(6).

In support of its Motion, and as more fully explained in the attached Memorandum of Law, IBM states as follows:

1.      Plaintiff Butera & Andrews, a law firm, has initiated this proceeding on its own behalf for supposed attacks on its computer systems.

2.      Plaintiff alleges that an anonymous John Doe defendant perpetrated these attacks remotely from an IBM facility.

3.      Plaintiff does not allege that such a person acted within the scope of his or her employment duties at IBM.

4.      Plaintiff fails to allege that IBM was aware of these attacks, let alone that it authorized or supported them.

5.      Plaintiff fails to allege that IBM acted "intentionally" as that term is intended under the operable statutes, and in fact makes allegations that are entirely inconsistent with intentional conduct on the part of IBM.

6.      Even accepting all of plaintiff's allegations as true for purposes of this Motion, plaintiff's legal theory against IBM is fatally flawed as a matter of law.  Because plaintiff cannot cure the fatal defects in its complaint by amending it, the complaint should be dismissed with prejudice.

IBM requests a hearing on this Motion at the Court's earliest convenience after briefing has concluded on June 28, 2006.

WHEREFORE, IBM requests that this complaint be dismissed with prejudice, that Plaintiff take nothing, and that this Court order such further relief as it deems appropriate.

Date:   June 2, 2006                                            Respectfully submitted,


                                                                    */s/ Mary Ellen Powers*
                                                                    Mary Ellen Powers (DC Bar #334045)
                                                                    Geoffrey S. Irwin (DC Bar #465754)
                                                                    JONES DAY
                                                                    51 Louisiana Avenue, NW
                                                                    Washington, DC  20001
                                                                    (202) 879-3939 (phone)
                                                                    (202) 626-1700 (fax)

                                                                    *Counsel for Defendant IBM*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| BUTERA & ANDREWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06CV00647 (RBW) |
| | ) | |
| INTERNATIONAL BUSINESS MACHINES | ) | |
| CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

**DEFENDANT IBM'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Plaintiff Butera & Andrews, a law firm, has initiated this proceeding on its own behalf against IBM and an unknown John Doe defendant for damages allegedly caused by unauthorized interference with the firm's computer systems. Plaintiff admits that it has no idea who attacked its computer systems, but alleges *on information and belief* that it may have been an IBM employee based only on the fact that some of the alleged attacks came through an Internet Protocol ("IP") address registered to IBM. Plaintiff alleges that the location to which the IP address is registered is one where IBM operates, supervises and maintains computers which are leased to other companies, but it alleges no facts to justify its supposition that its systems were attacked by an IBM employee, as opposed to a computer hacker or any of the individuals associated with the companies that used the computers associated with the IP addresses it has identified.

Plaintiff's complaint must be dismissed because plaintiff does not and cannot plead any intentional conduct on the part of IBM, as required by the three federal statutes under which it is

proceeding.  Conspicuous by its absence is any allegation that IBM knew about or authorized the attacks on plaintiff's computer systems, or that it had any conceivable motive to do so.  Indeed, even if the Court were to assume the truth of plaintiff's speculative allegation that an IBM employee was involved,[1] the only inference permitted from the facts alleged in the complaint is that the attacks were conducted by a rogue employee acting outside the scope of his or her employment and without authorization.  Because plaintiff cannot cure this infirmity, the complaint should be dismissed with prejudice.

## Complaint Allegations

Plaintiff Butera & Andrews is a law firm located in Washington, DC.  (April 7, 2006 Complaint for Damages and Injunctive Relief ("Cplt.") ¶ 6.)  As part of its ordinary business activities, plaintiff "makes extensive use of electronic mail" in its communications with clients and others.  *Id*.  Plaintiff contracts with a third party vendor to maintain and administer its e-mail service, accomplished in part by the operation of an off-site "computer e-mail server" for plaintiff's benefit.  *Id*. ¶ 7.

According to plaintiff, sometime in October or November of 2005 it became aware of certain activity suggesting that its e-mail server had been "compromised" by unauthorized parties.  *Id*.  In response to this discovery, plaintiff hired a computer forensic firm to investigate.  *Id*. ¶ 8.  The forensic investigators determined that an unauthorized computer "hacker" had penetrated the e-mail system and placed a series of code instructions in the e-mail server that "permitted the hacker to enter the system surreptitiously."  *Id*. ¶ 9.  Plaintiff does not contend that this initial penetration had anything to do with IBM.

---

[1] IBM recognizes that this Court must accept plaintiff's well-pled facts and *reasonable* inferences as true for purposes of this motion, *College Sports Council v. Gov't Accountability Office*, 421 F. Supp. 2d 59, 64 (D.D.C. 2006), but IBM categorically denies that it, or anyone acting on IBM's behalf, engaged in any of the conduct alleged.

Plaintiff further alleges that, on November 12, 2005, the early stages of an attempt by an unauthorized party to obtain access to plaintiff's e-mail server were detected and monitored by both plaintiff's forensic investigators and its vendor. *Id.* ¶ 11. While the intrusion was not successful, plaintiff allegedly determined that it "came from" a specific IP, or Internet Protocol, which is a series of numbers that serve as "locational information" for the transmission of information over the internet. *Id.* ¶¶ 10-11. This particular IP "address" is, according to plaintiff, "registered" to IBM and is "located" at an IBM facility in Durham, North Carolina. *Id.* ¶ 11. Based solely on that information, plaintiff pleads *upon information and belief* that an unknown IBM employee, named as defendant John Doe, "initiated, directed and managed this attack from the Durham, North Carolina facility." *Id.*

Plaintiff also alleges, however, that:

> At that location, IBM performs a variety of services, including but not limited to operation, supervision and maintenance of *computers leased to other companies* that serve as internet or private network servers, access to the internet and remote control and maintenance services for equipment located at other sites.

*Id.* ¶ 2 (emphasis added). Plaintiff ignores the fact -- of which this Court may take judicial notice -- that the sole IP address identified in connection with the November 12th attack (or any alleged attack for that matter) is 170.224.68.57 and leads to a webpage for a company called Workforce Management, which is not an IBM-related entity.[2] There is thus no basis for plaintiff's speculative inference that an IBM employee was involved in the attacks on its systems.

Plaintiff further alleges that additional attacks have been made on computers belonging to an unidentified client and the firm's outside computer security consultant, which it claims also came from IP addresses registered to the IBM facility in Durham, North Carolina, but it again

---

[2] This Court can take judicial notice that typing http://170.224.68.57 into the address line of any internet browser will pull up the Workforce Management webpage.

provides no facts to justify the speculation that the attacker was an IBM employee.[3]  *Id*. ¶¶ 12-13.
Moreover, plaintiff does not, and cannot, contend that all of the attacks it uncovered came
through IP addresses registered to IBM -- a glaring omission that undermines any suggestion that
an IBM employee, rather than a computer hacker, is responsible for the attacks.

Plaintiff finally alleges, on information and belief, that the IBM Durham facility has
implemented a policy by which it maintains computer activity logs for only 24 hours, a policy
which it claims encouraged "improper use of the machines" and prevents the tracking of
"[i]llegal, improper or unauthorized activity of any of the computers under the control or
management of the IBM Durham facility."  *Id*. ¶ 14.

On the basis of these allegations, plaintiff asserts claims for relief under three federal
statutes: (1) the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2), 1030(a)(5), 1030(b)
(*Id*. ¶¶ 15-16); (2) the Stored Wire and Electronic Communications Act, 18 U.S.C. § 2701 (*Id*.
¶¶ 17-18); and (3) the Federal Wiretap Act, 18 U.S.C. §§ 2511, 2520 (*Id*. ¶¶ 19-20).  Plaintiff
seeks equitable injunctive relief and monetary damages in excess of the $61,000 of costs
allegedly incurred in connection with the investigation of these activities.  *Id*. ¶¶ 8, 18, 20.

Plaintiff does not allege that any attacks or intrusions have occurred since November
2005.

## Argument

## I.    PLAINTIFF HAS FAILED TO PLEAD THE REQUISITE INTENT FOR THE STATUTORY VIOLATIONS AT ISSUE.

Plaintiff has failed to state a claim against IBM because it has not alleged any knowing,
intentional or deliberate actions by IBM.  Plaintiff asserts causes of action in its complaint under

---

[3] Plaintiff has no standing to assert damages on behalf of third parties, such as its unidentified client and
security consultant, and does not purport to represent them in this matter.

three federal statutes. All three are principally criminal statutes that provide for a private cause

of action under certain limited circumstances. The statutes are also similar in that they each

require a showing of knowing or intentional conduct in order for a violation to occur.

The Computer Fraud and Abuse Act ("Computer Fraud Act") provisions referenced in

Count I, for example, are directed at those who "intentionally" access a protected computer or

"knowingly" transmit information with the intent to cause damages:

(a)    Whoever --

    (2)    *intentionally* accesses a computer without authorization or exceeds
            authorized access, and thereby obtains --

        (C)    information from any protected computer if the conduct involved
                an interstate or foreign communication;

    (5)(A)(i)    *knowingly* causes the transmission of a program, information,
                code, or command, and as a result of such conduct, *intentionally*
                causes damage without authorization, to a protected computer;
                (ii) *intentionally* accesses a protected computer without
                authorization, and as a result of such conduct, recklessly causes
                damages; or (iii) *intentionally* accesses a protected computer
                without authorization, and as a result of such conduct, causes
                damage; and .…

18 U.S.C. §§ 1030(a)(2), (a)(5) (emphasis added). Similarly, the Stored Wire and Electronic

Communications Act ("Stored Wire Act") violation pled in Count II would only arise against

someone who has violated one of its provisions "with a knowing or intentional state of mind."

18 U.S.C. § 2707(a).

The Federal Wiretap Act (Count III) is equally clear that it proscribes only intentional

conduct:

(1)    Except as otherwise specifically provided in this chapter any person who --

    (a)    *intentionally* intercepts, endeavors to intercept, or procures any other
            person to intercept or endeavor to intercept, any wire, oral, or electronic
            communication;

- 5 -

> (b)    *intentionally* uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication ….

18 U.S.C. §§ 2511(1)(a)-(b) (emphasis added).

What constitutes "intentional" conduct in this arena has been narrowly circumscribed by the courts. As explained by the First Circuit in *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 23 (1st Cir. 2003):

> As used in the Electronic Communications Privacy Act [including the Federal Wiretap Act and the Stored Wire and Electronic Communications Act], the term "intentional" is narrower than the dictionary definition of "intentional." "Intentional" means more than that one voluntarily engaged in conduct or caused a result. Such conduct or the causing of the result must have been the person's conscious objective.

Here, plaintiff does not allege that IBM acted with the requisite knowledge or intent. There is no claim that IBM authorized any person to attack or otherwise obtain unauthorized access to plaintiff's computer systems. Moreover, plaintiff offers no conceivable motive for IBM to engage in such conduct, nor any benefit that could possibly be derived by IBM as a "conscious objective" of any such attacks. The allegation that IBM "is connected to" the attacks because they were made by a computer whose IP address is registered to an IBM facility (Cplt. ¶¶ 16, 18, 20), even if true, does not approach the level of intentional conduct contemplated by *Pharmatrak* and other courts that have considered the question. *See, e.g.*, *Leblanc v. Allstate Ins. Co.*, No. 99-2724, 2000 U.S. Dist. LEXIS 9351, at *6, *8-9 (E.D.La. June 23, 2000) (granting motion to dismiss where plaintiff could not establish that defendant intentionally exceeded its authority in obtaining plaintiff's credit report) (attached as Ex. A); *Letscher v. Swiss Bank Corp.*, No. 94CIV8277, 1997 WL 304895, at *4-6 (S.D.N.Y. June 5, 1997) (rejecting Computer Fraud Act claim for want of intentional conduct) (attached as Ex. B); *In re Pharmatrak, Inc. Privacy*

*Litig.*, 292 F. Supp. 2d 263, 266-68 (D. Mass. 2003) (rejecting Federal Wiretap Act claim for want of intentional conduct).

Indeed, plaintiff's allegation that IBM implemented a computer logging policy which prevents detection of "*unauthorized* activity of any of the computers under the control" of the Durham facility after a 24-hour period, thus "encourage[ing] *improper use* of the machines" (Cplt. ¶ 14 (emphasis added)), contradicts any claim that IBM intentionally accessed or interfered with plaintiff's computer systems. These are allegations that sound, at most, in negligence, not the knowing and intentional conduct required under these federal statutes. *Pharmatrak*, 329 F.3d at 23.

## II.    IBM CANNOT BE LIABLE UNDER A THEORY OF RESPONDEAT SUPERIOR OR VICARIOUS LIABILITY.

Even if the Court accepted as true plaintiff's speculative allegation that an IBM employee was involved in the attacks, there would be no grounds for imposing liability on IBM. Plaintiff has pleaded no facts that would permit the application of a theory of respondeat superior and, even if it had, the statutory schemes under which this action is brought do not permit a plaintiff to pursue a private right of action in these circumstances.

Under the doctrine of respondeat superior, an employer can be held liable for the torts of an employee that are committed within the scope of his or her employment. RESTATEMENT (SECOND) OF AGENCY § 219(1). *See also, Penn Cent. Transp. Co. v. Reddick*, 398 A.2d 27, 29 (D.C. 1979) (same) (applying DC law). An employee's act is not within the scope of his or her employment, however, "if it is different in kind from that authorized" or "if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed." RESTATEMENT §§ 228(2), 235. A claim for respondeat superior will therefore not be sustained where the employee has acted entirely for personal reasons and not for the benefit of the

employer. *Haddon v. United States*, 68 F.3d 1420, 1424 (D.D.C. 1995) ("It is not enough that an employee's job provides an 'opportunity' to commit an intentional tort."); *Graves v. Tubb*, 281 F. Supp. 2d 886, 891-92 (N.D. Miss. 2003) (granting motion to dismiss allegations that employee misused corporate access to credit report information of third parties).[4]

Here, plaintiff does not even pretend that these acts occurred within the scope of anyone's employment duties at IBM. It does not allege that IBM authorized or benefited from any such attacks, and the allegations of paragraph 14 of the complaint -- which fault IBM for failing to detect or stop "improper" and "unauthorized" use of its computers -- is inconsistent with any claim that the alleged conduct was within the scope of any employee's duties. As one court has remarked, an employer "cannot guarantee that a rogue employee will not obtain [confidential] information for personal reasons. Some employee acts evidence such intentional disregard for protocol that such actions cannot be imputed to the employer." *Graves*, 281 F. Supp. 2d at 892-93. *See also Keys v. Washington Metro. Area Transit Auth.*, 408 F. Supp. 2d 1, 4 (D.D.C. 2005) (motion granted for lack of allegations showing "that the alleged conduct of [defendant's] employees was an outgrowth of their work assignments, or an integral part of their business activities, interests, or objectives"); *Johnson v. United States*, No. 87-0300, 1987 WL 15690, at *1-2 (D.D.C. July 31, 1987) (dismissing complaint devoid of any alleged act that "grew out of a foreseeable job-related controversy and was motivated at least in part by a purpose to serve his principal") (attached as Ex. C).

While there are limited precedents addressing the subject, at least one district court has squarely rejected the claim that an employer can be held vicariously liable for a violation of the Computer Fraud Act based on the unauthorized acts of an employee. In *Doe v. Dartmouth-*

---

[4] Respondeat superior is the specific application of vicarious liability in the employer/employee context, and on these facts the terms are virtually synonymous. *Penn Central*, 398 A.2d at 29.

*Hitchcock Med. Ctr.*, No. CIV00-100-M, 2001 WL 873063 (D.N.H. July 19, 2001) (attached as Ex. D), a patient sued her former medical practice under the Computer Fraud Act when she discovered that one of the doctors in the practice, with whom she had had a personal relationship, had been accessing and reviewing her medical records without any medical justification.  *Id*. at *2.  The court granted a motion for summary judgment in favor of the medical practice.  The court noted that the Computer Fraud Act permitted a civil action only against "the violator," and found that this label applied on its face only to the individual doctor and not the medical practice which employed her.  *Id*. at *4-5.

The *Doe* court flatly rejected the argument that the employer could be held liable for the doctor's conduct on a theory of vicarious liability.  Noting that the Computer Fraud Act was principally a criminal statute, the court determined that "[e]xpanding the private cause of action created by Congress to include one for vicarious liability against persons who did not act with criminal intent and cannot be said to have violated the statute, like the Dartmouth defendants, would be entirely inconsistent with the plain language of the statute."  *Id*. at *5.  *Cf. Nexans Wiress S.A. v. Sark-U.S.A., Inc.*, 319 F. Supp. 2d 468, 472 (S.D.N.Y. 2004) (distinguishing *Doe* in light of allegations that defendants actually directed hackers to steal information from plaintiff).

Plaintiff's remaining counts fail for the same reasons.  Both the Stored Wire Act and the Federal Wiretap Act are principally criminal statutes that have been extended in limited circumstances to create a private cause of action *against the actual offenders*.  Like the Computer Fraud Act, both the Federal Wiretap Act and the Stored Wire Act contain identical language that permits a limited private action, but only against "the person or entity … which engaged in that

violation."  18 U.S.C. §§ 2520(a), 2707(a).  *Doe*'s rationale is therefore equally applicable to all of plaintiff's claims.[5]

Just as IBM cannot be held liable as the "violator" because it is not alleged to have engaged in any intentional wrongdoing, it also cannot be held vicariously liable under any of these statutes for the alleged conduct of rogue employees who act without the knowledge or authorization of IBM.  Because plaintiff's claims and legal theories are insufficient as a matter of law, no amount of repleading can cure their defects and the complaint should be dismissed with prejudice.

### Conclusion

For all of the aforementioned reasons, plaintiff's complaint should be dismissed with prejudice under Federal Rule 12(b)(6).

Date:   June 2, 2006                                          Respectfully submitted,


                                                    */s/ Mary Ellen Powers*
                                                    Mary Ellen Powers (DC Bar #334045)
                                                    Geoffrey S. Irwin (DC Bar #465754)
                                                    JONES DAY
                                                    51 Louisiana Avenue, NW
                                                    Washington, DC  20001
                                                    (202) 879-3939 (phone)
                                                    (202) 626-1700 (fax)

                                                    *Counsel for Defendant IBM*

---

[5] Even when the specific federal statutes raised in this case are not invoked, courts have been reluctant to impose vicarious liability on employers for the unauthorized acts of employees who are given access to company computer equipment and to the internet in their "capacity" as employees.  In *Booker v. GTE.net*, 350 F.3d 515 (6th Cir. 2003), for example, the Sixth Circuit affirmed an order of dismissal on a vicarious liability claim against the employer of an employee who sent e-mails to the employer's customers under a false identity.  The *Booker* panel had little difficulty concluding that a respondeat superior theory of liability against the unwitting employer was untenable.  *Id.* at 518-20.