**EXHIBIT B**

Westlaw.

Not Reported in F.Supp. Page 1

Not Reported in F.Supp., 1997 WL 304895 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Joseph LETSCHER, Plaintiff,
v.
SWISS BANK CORPORATION, Equifax Credit Information Services, and Unknown John & Mary Does 1 Through 5, Defendants.
**No. 94 CIV. 8277 LBS.**

June 5, 1997.

Dan Cherner, New York, NY, for Plaintiff.
Dewey Ballantine, New York, NY, Janis Meyer, Helena Tavares, Sheryl Galler,(Of Counsel), for Defendant.

SAND, District Judge.
*1 Plaintiff Joseph Letscher sues under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a et seq., based on the acquisition of his credit report by Defendant Swiss Bank Corporation ("Swiss Bank "). Now before the Court is a motion by Swiss Bank for summary judgment as to the sole remaining claim in this litigation, brought under 15 U.S.C. §§ 1681n and 1681q. Also before the Court is a motion by Letscher for leave to file a second amended complaint to assert various other claims. For the reasons set forth below, Swiss Bank's motion for summary judgment is granted, and Letscher's motion for leave to amend is denied.

I.

BACKGROUND

This Court issued a prior opinion in this case on April 16, 1996. See *Letscher v. Swiss Bank Corp.,* No. 94 Civ. 8277(LBS), 1996 WL 183019 (S.D.N.Y. Apr.16, 1996). Familiarity with this prior opinion is assumed.

On April 6, 1987, Joseph Letscher commenced employment as a database administrator with the New York branch of Swiss Bank. As part of his employment application, Letscher signed written authorizations for Swiss Bank to perform a credit check. These authorizations expired when Letscher's employment came to an end on September 9, 1987.

The parties had no dealings with each other in the initial years following the termination of Letscher's employment. Then, beginning in 1989 and extending to 1993, Swiss Bank received subpoenas for information concerning Letscher's employment with Swiss Bank. This information was to be used by the Federal Government in a criminal prosecution of Letscher for tax violations.

As the date of Letscher's criminal trial approached in 1993, Anita Taub, an attorney with Swiss Bank's legal department, asked Swiss Bank's Security & Safety Department to forward Letscher's employment file to the legal department, apparently for use in the preparation of a Swiss Bank employee who was to testify as a custodian of records at the trial. Taub's request came to the attention of Helen Weglarz, an administrative assistant in the Security & Safety Department. After reviewing Letscher's file and finding that it did not contain a credit report, Weglarz accessed Letscher's credit report from Equifax Credit Information Services ("Equifax ") on February 25, 1993. This act by Weglarz, which came long after Letscher's written authorizations had expired, provides the basis for this lawsuit.

Swiss Bank contends that Weglarz accessed Letscher's credit report under the mistaken belief that Letscher was still an employee of Swiss Bank and thus that his written authorizations for access of a credit report were still effective. According to the deposition testimony of Weglarz, Letscher's file

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2

Not Reported in F.Supp., 1997 WL 304895 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

had mistakenly been kept among the files for current employees rather than the files for terminated employees, thus leading her to believe that Letscher was still employed by Swiss Bank. *See* Weglarz Dep. at 79-83. According to Weglarz, when she reviewed the file and noticed that it lacked an updated credit report, she proceeded to obtain an updated report from Equifax in order to have a "complete file," all the while believing that Letscher's authorizations were still valid. *See id.* at 145-46. Weglarz apparently did not realize her error until a short time after obtaining the report, when she was informed by Albert Dietschi, a member of the legal department, that Letscher no longer worked for Swiss Bank. *See id.* at 85-87. According to Weglarz, she then faxed the information in the file to the legal department, minus the credit report, and placed the report in the file along with a note indicating that the report had been accessed erroneously.[FN1] *See id.* at 84-88. Weglarz then placed the file among the files for terminated employees. *See id.* at 99. Weglarz testified that no one from the legal department or elsewhere had instructed her to obtain the report, and that no one from the legal department had told her why Letscher's file was being requested. *See id.* at 87-88.

> FN1. Swiss Bank contends that the report was never disseminated to any third party, other than in connection with this litigation.

*2 Letscher contends that Swiss Bank's version of the facts is a fabrication designed to hide the fact that the credit report was accessed with full knowledge that Letscher was no longer an employee and that his written authorizations were no longer valid. Letscher contends that the Swiss Bank employees who were involved in the acquisition of his credit report (i.e. Taub and/or Weglarz) were aware that they had no authorization to access the report, and that they nevertheless obtained the report under false pretenses by representing to Equifax that the report was being accessed for employment purposes. Letscher contends that the report was so obtained for the purpose of forwarding it to the Government for use in the criminal prosecution.

Letscher filed a complaint in this Court in November 1994.[FN2] As amended, the complaint asserted claims under the FCRA, as well as claims for unauthorized computer access under 18 U.S.C. § 1030 and mail and wire fraud under 18 U.S.C. §§ 1341 and 1343. In our April 16, 1996 opinion, this Court dismissed Letscher's claims under sections 1030, 1341, and 1343, as well as certain claims under the FCRA. *See Letscher,* 1996 WL 183019, at *3-*6. However, this Court declined to dismiss Letscher's claim under 15 U.S.C. §§ 1681n and 1681q for knowing and willful procurement of a credit report under false pretenses. *See id.* at *7. Swiss Bank now moves for summary judgment as to this claim.

> FN2. Letscher was acting *pro se* when he filed his initial complaint. He has been represented by counsel since July 1996.

II.

DISCUSSION

A. *Swiss Bank's Motion for Summary Judgment*

1. Standard for summary judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the facts in the light most favorable to the non-moving party, and must resolve all ambiguities and draw all inferences against the moving party. *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991). In determining whether to grant a motion for summary judgment, the court is not to " weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of establishing the absence of a material issue of fact.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1997 WL 304895 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, if the non-moving party would bear the burden of proof on a claim at trial, as Plaintiff would in this case, then the moving party may satisfy its burden by demonstrating an absence of evidence to support an essential element of such a claim. Id. at 325. To defeat the motion, the non-moving party must " do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but instead must point to evidence sufficient to establish each element of its case, *Celotex Corp.,* 477 U.S. at 322-evidence, that is, such that a reasonable jury could return a verdict for the non-moving party on that element. *Liberty Lobby,* 477 U.S. at 248-49; *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir.1992).

*3 2. Letscher's claim under sections 1681n and 1681q

15 U.S.C. § 1681n provides a cause of action against any user of credit report information who " willfully" fails to comply with any provision of the FCRA. Section 1681n thus provides civil liability for a violation of 15 U.S.C. § 1681q, which provides a criminal penalty for any person who " knowingly and willfully" obtains information from a consumer reporting agency under "false pretenses. " Hence, the question before us on Swiss Bank's motion for summary judgment is whether there is sufficient evidence for a reasonable jury to conclude that Swiss Bank employees knowingly and willfully obtained Letscher's credit report under false pretenses.FN3 We conclude that there is not.

> FN3. To show that Swiss Bank acted " knowingly and willfully," Letscher must show that Swiss Bank employees acted with "conscious disregard" of the rights of others. *See Letscher,* 1996 WL 183019, at *7. "False pretenses" can be shown by demonstrating that Swiss Bank employees accessed the credit report for a purpose which is not permissible under 15 U.S.C. § 1681b, without disclosing such impermissible purpose. *See Baker v. Bronx-Westchester Investigations, Inc.,* 850 F.Supp. 260, 263 (S.D.N.Y.1994). Hence, Letscher must produce sufficient evidence to support a jury finding that one or more Swiss Bank employees consciously caused the acquisition of his credit report for an impermissible purpose (i.e. giving it to a third party, namely, the Government) by means of a misrepresentation that the report was being obtained for a permissible purpose (i.e. employment purposes).

The players in the acquisition of Letscher's credit report have denied Letscher's version of the facts. As mentioned, Weglarz testified that she mistakenly believed that Letscher was a Swiss Bank employee at the time she accessed his credit report, and she therefore believed that Letscher's written authorizations were still valid. *See* Weglarz Dep. at 75, 79-80. Weglarz testified that she was not instructed by anyone to obtain Letscher's credit report-rather, Taub simply asked that Weglarz forward whatever information was in Letscher's file to the legal department. *See id.* at 84-88. Weglarz also testified that no one informed her why Letscher's file was being requested. *See id.* at 87-88. Taub testified that she was not aware on February 25, 1993, that Letscher's credit report had been acquired, and that she did not become aware of the acquisition until some time later when she viewed a letter from Letscher inquiring as to why Swiss Bank had obtained his credit report. *See* Taub Dep. at 150. Furthermore, Linda Knight, the Swiss Bank employee who testified as a custodian of records at Letscher's trial, testified that she had never seen a credit report relating to Letscher. *See* Knight Dep. at 155.

Letscher brings forth no affirmative evidence to support his version of the events. Instead, Letscher attempts to construct a genuine issue of fact by relying upon unsupported assertions made "upon information and belief" in the declaration of his attorney, *see* Cherner Decl. Dated Mar. 17, 1997 ¶ ¶ 33-45, and by attempting to identify alleged inconsistencies and coincidences in the testimony of Swiss Bank employees.FN4 Most significantly,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                          Page 4

Not Reported in F.Supp., 1997 WL 304895 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Letscher makes no attempt to utilize the criminal trial transcript to identify to the Court any specific instances where material from the credit report was introduced in the trial.[FN5] Instead, Letscher relies upon an unsupported statement in the declaration of his attorney that such material was introduced, *see id.* ¶ 45, and conclusory statements in Letscher's own deposition to the same effect, *see* Letscher Dep. at 264-66. Hence, there is no support for Letscher's theory that Swiss Bank employees obtained his credit report under false pretenses in order to provide the report to the Government for use at Letscher's trial.[FN6]

FN4. For example, Letscher points to: Weglarz's testimony that, other than the Letscher case, she had never obtained a credit report on any employee other than within a few days following the commencement of an employee's work at Swiss Bank, *see* Weglarz Dep. at 78-79; Weglarz's testimony that the credit report was never destroyed, *see id.* at 88-89; Weglarz's testimony that she never sought to ascertain why Letscher's file had been misfiled, *see id.* at 135; Weglarz's testimony that she was informed that Letscher was no longer a Swiss Bank employee immediately after she obtained the credit report but before she sent the report to the legal department, *see id.* at 85-87; and the testimony of Weglarz's superior, Frank Santangelo, that he did not discipline Weglarz for her mistaken acquisition of the credit report, *see* Santangelo Dep. at 83. The Court has considered each of these alleged inconsistencies and coincidences. In light of the absence of affirmative evidence to support Letscher's version of events, the Court finds these alleged inconsistencies and coincidences insufficient to create a material question of fact.

FN5. Swiss Bank has submitted a declaration from a paralegal in the U.S. Attorney's Office who undertook a review, for purposes of this litigation, of the U.S. Attorney's Office's files on the Letscher prosecution. *See* Chu Decl. ¶¶ 1-4. This paralegal declares that the files do not contain a February 25, 1993 credit report from Equifax. *See id.* ¶ 4.

FN6. Furthermore, the assertion that Swiss Bank employees engaged in fraudulent behavior with the motive of assisting the Government in prosecuting Letscher strains credulity. *See Matsushita,* 475 U.S. at § 96 (stating that "the absence of any plausible motive to engage in the conduct charged is highly relevant to whether a 'genuine issue for trial' exists within the meaning of Rule 56(e).").

*4 It is thus apparent that Letscher's sole hope of prevailing at trial is to convince the jury to disbelieve the denials of the Swiss Bank employees. The Second Circuit has indicated, however, that a party cannot survive a motion for summary judgment based on such hope. *See Goldhirsh Group, Inc. v. Alpert,* 107 F.3d 105, 109 (2d Cir.1997) (stating that " ' [i]f all of the witnesses deny that an event essential to the plaintiff's case occurred, the plaintiff cannot get to the jury simply because the jury might disbelieve these denials. There must be some affirmative evidence that the event occurred.' ") (citation omitted); *Dyer v. MacDougall,* 201 F.2d 265, 269 (2d Cir.1952) (stating that "although it is therefore true that in strict theory a party having the affirmative might succeed in convincing a jury of the truth of his allegations in spite of the fact that all the witnesses denied them, we think it plain that a verdict would nevertheless have to be directed against him.").[FN7] Letscher finds himself in the same situation as the claimants in *Goldhirsh* and *Dyer,* and therefore we must dismiss his claim under sections 1681n and 1681q.

FN7. The *Dyer* court left open the possibility that a plaintiff might avoid summary judgment if the denying witnesses were "recalcitrant, or crafty, or defiant, or evasive" in their deposition testimony. *See Dyer,* 201 F.2d at 269.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1997 WL 304895 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Though Letscher has attempted to direct our attention to alleged inconsistencies or coincidences in the depositions of the Swiss Bank employees, we do not find that these employees were in any sense recalcitrant, crafty, defiant, or evasive.

We note that, in denying summary judgment as to this claim in our April 16, 1996 opinion, we referred to the coincidental nature of some aspects of Swiss Bank's story, such as the misplacement of Letscher's file and the circumstances under which Weglarz learned that Letscher was no longer a Swiss Bank employee. *See Letscher,* 1996 WL 183019, at *7. We noted that Letscher was *pro se* at that time, and that no discovery had taken place. *See id.* Thus, we denied summary judgment in order to let discovery proceed. *See id.* Discovery is now complete, and Letscher has failed to produce any affirmative evidence to counteract Swiss Bank's version of the events. Hence, the time has come to grant summary judgment as to Letscher's claim under sections 1681n and 1681q.

B. *Letscher's Motion to Amend*

Letscher seeks leave to file a second amended complaint which will assert several additional claims, some of which are new and some of which are not: 1) a claim under 18 U.S.C. § 1030(a)(2); 2) a claim under 18 U.S.C. § 1030(a)(5); 3) a claim under 18 U.S.C. § 1343; and 4) state law claims for breach of contract, fraud, and negligence.

Leave to amend should be denied where amendment would be futile. *See Yerdon v. Henry,* 91 F.3d 370, 378 (2d Cir.1996) (stating that leave to amend may be denied where such amendment is "unlikely to be productive"); *Lee v. Regal Cruises, Ltd.,* 916 F.Supp. 300, 303-04 (S.D.N.Y.1996) (denying leave to amend where facts to be added to complaint would not have saved plaintiff's case from dismissal). Discovery in this case is now complete, and all evidence concerning the acquisition of Letscher's credit report has been adduced. As set forth below, we conclude that each federal claim which Letscher seeks to add would not survive a motion to dismiss or a motion for summary judgment, and thus amendment would be futile.

*5 1. 18 U.S.C. § 1030(a)(2)

18 U.S.C. § 1030(a)(2) applies to any person who "intentionally accesses a computer without authorization or exceeds authorized access" and thereby obtains certain types of information. In this Court's April 16, 1996 opinion, we dismissed a claim under section 1030(a)(2), as asserted in Letscher's first amended complaint, on the ground that Letscher had failed to plead economic damages as required under 18 U.S.C. § 1030(g). *See Letscher,* 1996 WL 183019, at *3. Our opinion stated that we would reconsider the matter if Letscher sought leave to amend to assert economic damages. *See id.*

Leaving aside the question whether the second amended complaint which Letscher seeks to file pleads damages adequately, it is evident from the facts adduced during discovery that Letscher cannot hope to prevail on a claim under section 1030(a)(2). As the Second Circuit has indicated, a claim under this section requires proof of intentional acts of unauthorized access-the statute is not designed to reach "'mistaken, inadvertent, or careless' acts of unauthorized access." *United States v. Morris,* 928 F.2d 504, 507 (2d Cir.1991) (citation omitted). Our discussion of Swiss Bank's summary judgment motion reveals that Letscher has not produced any evidence to support a rational finding that Swiss Bank employees acted with the intent to access his credit report in an unauthorized manner. Discovery is now at an end, and the facts produced by the parties reveal nothing other than "mistaken, inadvertent, or careless" acts by Swiss Bank employees. Accordingly, amendment of Letscher's complaint to add a claim under section 1030(a)(2) would be futile.

2. 18 U.S.C. § 1030(a)(5)

This statute has undergone multiple amendments since Letscher's credit report was accessed by Swiss Bank. Based on the facts adduced in discovery, it is clear that Letscher cannot establish a claim under the current version of section 1030(a)(5) or any

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1997 WL 304895 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

prior version.

At the time Letscher's credit report was accessed, section 1030(a)(5) applied to any person who "intentionally accesses a Federal interest computer without authorization, and ... alters, damages, or destroys any information in any such Federal interest computer, or prevents authorized use of any such computer or information." As with section 1030(a)(2), this version of section 1030(a)(5) was meant to apply to intentional acts of unauthorized access. *See United States v. Sablan,* 92 F.3d 865, 868 (9th Cir.1996). As discussed, Letscher has produced no evidence to support a rational finding that Swiss Bank employees intentionally engaged in unauthorized access of his credit report.

Section 1030(a)(5) was amended in 1994.[FN8] The amendment created two subdivisions: 1) section 1030(a)(5)(A), which applied to any person who "knowingly causes the transmission of a program, information, code, or command to a computer or computer system if ... the person causing the transmission intends that such transmission will ... damage, or cause damage to, a computer, computer system, network, information, data, or program, or ... withhold or deny, or cause the withholding or denial, of the use of a computer, computer services, system or network, information, data or program", and 2) section 1030(a)(5)(B), which contained the same language as section 1030(a)(5)(A), except that the mens rea requirement was one of reckless disregard of a substantial risk of causing damage or denying use. The second amended complaint which Letscher seeks leave to file does not recite any facts to indicate that any Swiss Bank employee accessed any computer with intent to cause damage or deny use, or with reckless disregard of a substantial risk of causing damage or denying use. Rather, the second amended complaint simply tracks the language of section 1030(a)(5), which is of course not sufficient to state a claim. The facts adduced at discovery do not give any indication that a claim under this version of section 1030(a)(5) can be established.

> FN8. It is this 1994 version of section 1030(a)(5) which Letscher seeks to invoke in his second amended complaint. *See* Second Am. Compl. ¶¶ 42-49.

*6 Section 1030(a)(5) was amended yet again in 1996. Section 1030(a)(5)(A) now applies to any person who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer", and section 1030(a)(5)(B) now applies to any person who "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage." [FN9] Again, Letscher's second amended complaint does not contain any facts to support a claim that any Swiss Bank employee intentionally or recklessly caused damage to any computer. Discovery has failed to reveal any evidence that any such conduct occurred.

> FN9. "Damage" is currently defined as " any impairment to the integrity or availability of data, a program, a system, or information, that (A) causes loss aggregating at least $5,000 in value during any 1-year period to one or more individuals; (B) modifies or impairs, or potentially modifies or impairs, the medical examination, diagnosis, treatment, or care of one or more individuals; (C) causes physical injury to any person; or (D) threatens public health or safety." 18 U.S.C. § 1030(e)(8).

Accordingly, amendment of Letscher's complaint to add claims under section 1030(a)(5) would be futile.

3. 18 U.S.C. § 1343

18 U.S.C. § 1343 prohibits any "scheme or artifice to defraud" carried out by means of wire, radio, or television communication. In our April 16, 1996 opinion, we granted summary judgment to *Swiss Bank* on a claim under section 1343 as asserted in Letscher's first amended complaint, in part on the ground that Letscher had failed to adduce facts which would establish a scheme to defraud. *See Letscher,* 1996 WL 183019, at *5-*6. As our foregoing discussion of *Swiss* Bank's motion for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 7
Not Reported in F.Supp., 1997 WL 304895 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

summary judgment reveals, Letscher has still failed to produce any evidence to support the existence of any "scheme or artifice to defraud" on the part of Swiss Bank employees. Accordingly, amendment to assert a section 1343 claim would be futile.

4. State law claims

Having dismissed Letscher's claim under sections 1681n and 1681q, and having denied leave to amend to assert causes of action under other federal statutes, and jurisdiction of this Court having been invoked on the basis of federal question jurisdiction, there is no basis for this Court to assert jurisdiction to hear state law claims. *See Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir.1995). Accordingly, leave to amend to assert state law claims is denied.

III.

CONCLUSION

For the foregoing reasons, Swiss Bank's motion for summary judgment is granted, and Letscher's motion for leave to amend is denied.

SO ORDERED.

S.D.N.Y.,1997.
Letscher v. Swiss Bank Corp.
Not Reported in F.Supp., 1997 WL 304895 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:94cv08277 (Docket) (Nov. 15, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.