United States District Court
For the District of Columbia

BUTERA & ANDREWS,
                Plaintiff

v.                                                    1:06cv00647(RBW)

INTERNATIONAL BUSINESS MACHINES
CORPORATION, et al.,
                Defendants

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM AND CROSS MOTION FOR
LIMITED EXPEDITED DISCOVERY**

      Plaintiff Butera & Andrews opposes the Defendant IBM's motion to dismiss the complaint pursuant to Federal Rule 12(b)(6) and in support of this position would ask the Court to consider the following:

      Defendant IBM's arguments that the complaint fails to allege facts specific enough to include them within the statutory causes of action is refuted by the persistent and exclusive presence of IBM registered IP addresses in the attacks as outlined in the complaint.

      Defendant's arguments that the Plaintiff is unable to prove facts sufficient enough to include them within the statutory causes of action is an observation that cannot prevail under the Rule 12(b)(6) standard and, in any event, is one that can only be cured by limited discovery to resolve those issues.

1

It should be noted that Plaintiff and Defendant IBM have engaged in discovery discussions both prior to the filing of the complaint and subsequent to the commencement of this lawsuit. While initially there was some limited cooperation in these discussions, the Defendant IBM has pointedly declined to provide access to the internal material which Plaintiff believes will demonstrate culpability on the part of IBM.

While Plaintiff believes that the present complaint does satisfy the minimum requirements to defeat a Rule 12(b)(6) motion to dismiss, it would also urge this Court to permit the limited type of discovery outlined in the last section of this memorandum in order to fully resolve this issue.

## **Counter Argument**

### 1. Standards for Rule 12(b)(6) Motions

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," which gives the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C.Cir. 2003); *Amons v. District of Columbia*, 231 F.Supp.2d 109, 113 (D.D.C. 2002) It is not necessary for the plaintiff to plead all elements of his *prima facie* case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14, 122 S.Ct. 992 (2002), or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C.Cir. 2000).

Rule 12(b)(6) motions should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102 (1957); *Warren v. District of*

*Columbia*, 353 F.3d 36, 37 (D.C.Cir. 2004); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir. 1994); *Stanford v. Potomac Electric Power Co*, 394 F.Supp.2d 81, 86 (D.D.C. 2005).

At this stage of the proceedings, the Court should accept as true all of the complainant's factual allegations and draw all reasonable inferences in favor of Plaintiff. *Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229 (1984); *Sparrow v. United Airlines,* 216 F.3d 1111 (D.C.Cir. 2000); *Kowal*, 16 F.3d at 1276. This directive includes mixed questions of law and fact. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C.Cir. 2003), *cert. denied,* 540 U.S. 1149 (2004). The movant is entitled to judgment only if there are no allegations in the complaint which, even if proven, would provide a basis for recovery. *Browning v. Clinton*, 292 F.3d 234, 242 (D.C.Cir. 2002).

2. Background of Events in the Complaint

Defendant begins with an overview of the three significant events that provide the basis for the complaint. The first was an attempt to access the Butera & Andrews e-mail server on November 8, 2005. This is the attack referenced in paragraph 11 of the complaint.[1] It was monitored in real time by members of the computer security service retained by the Plaintiff as well as the staff at the e-mail server company which hosts this particular machine. Computer logs of this event indicate that it originated from the IP address of 170.224.68.57. Internet records, that are apparently undisputed at this point, demonstrate that this IP address is registered to Defendant IBM at its Durham facility.

Several days later, the security service retained by the Plaintiff experienced multiple denial of service (DoS) attacks that are outlined in paragraph 12 of the

---

[1] The initial complaint contains a typographical error for the date.

complaint. While serving as an agent of the Plaintiff in an attempt to track the individual or individuals engaged in the attempts to access the e-mail server, the security people left easily-followed electronic footprints to a particular machine run outside the e-mail server by one of the security staff but connected by a virtual private network. That machine was subject to DoS attacks on November 12 and 13, 2005. These attacks came from the following IP addresses: 170.224.176.49 and 170.224.176.50. Internet registration records again reflect that all of these IP addresses are registered to the Defendant IBM at its Durham facility. These IP addresses have been supplied to the Defendant IBM during pre-complaint discussions.

In the third incident, as reflected in paragraph 13 of the complaint, security personnel retained by the Plaintiff looked at the computer servers for a number of clients of Butera & Andrews for suspicious activities. In examining a client who maintained extensive log files for its own server, it was discovered that a large number of computers with IBM registered IP addresses had engaged in a sophisticated stealth scan for open ports into the client's machine. These scans took place over a period from January 21, 2005 to December 15, 2005 and eventually numbered 40,167 events. They were conducted in such a sophisticated nature that the IT personnel responsible for the running of this client's server did not immediately recognize an organized attack until it was pointed out to them. The pattern generated by this information reflects specific dates and times for each scan. Within the pattern there are 82 individual IP addresses. All of these are registered to the Defendant IBM facility at Durham, North Carolina. These IP addresses have been supplied to IBM during pre-complaint discussions. Significantly, the IBM motion to dismiss does not dispute that these addresses are registered to IBM.

### 3. Response to IBM Arguments

Defendant IBM argues that the Plaintiff has no idea who attacked its computer system.[2] This is not precisely correct. Plaintiff can demonstrate that the machine which attempted to access its mail server on November 8, 2005, has an address registered to it in the name of the Defendant IBM. In addition, the DoS attack upon the security personnel a few days later came from IBM registered addresses. While it is true that the DoS attack could have been made on this independent machine from out of the blue, it is more likely that this machine was selected for a DoS attack because of the electronic picket fence erected around the Butera & Andrews server after the November 8, 2005 attack. Both of these addresses that made the DoS attack were registered to IBM. Finally, the stealth scans that fit within the discovered pattern on the computer of the client of Butera & Andrews are all IBM registered IP addresses. IBM's registration for these addresses is not currently in dispute.

While Plaintiff may not know the name of the person or persons who pressed the "enter" button for each attack, it is reasonable to suspect that it is a person who has intimate knowledge of IBM facilities and authority from IBM to maintain, test, monitor and access the computers assigned to these numbers. The stealth and breadth of the attacks coupled with the apparent inference that IBM security officials have no record of these events suggest that it may be managerial or supervisory personnel. The hacking efforts that form the basis of the Plaintiff's complaint are made much easier by a person on the inside who does not have to circumvent IBM's external firewalls and security, who can simply walk down the hallway at Durham to observe the type of servers and routers

---

[2] Defendant IBM's Memorandum at p. 1

5

in use by IBM clients or look up the specs for internal firewalls and other security devices that individual customers may be running within the Durham facility or other IBM server farms. The large number of IBM addresses involved and the lack of any non-IBM addresses in these attacks points directly to IBM.

While it is true that such events could possibly be controlled by an outsider, the concerted and sophisticated use of exclusively IBM computer assets infers the opposite. Only discovery as requested at the close of this memorandum will put the matter to rest with facts. At this stage, however, the allegations are sufficient to withstand a Rule 12(b)(6) motion.

Defendant IBM also argues that the plaintiff cannot plead facts that support a conclusion of intentional action on the part of IBM. To the contrary, Plaintiff has pled that IBM assets initiated these attacks.[3] Plaintiff must point out that it does not yet have access to IBM's internal security information, personnel records, activity logs, administrative logs, maintenance logs, security and event reports and other internal IBM material which would include (or exclude) IBM personnel or agents from this activity and whether these persons were acting on behalf of IBM and in furtherance of their employment. It seeks such material in limited expedited discovery for the determination of employment scope and duties for those at the Durham facility and the identity of the John Doe mentioned in the complaint. Plaintiff does allege that the attacks and port scans took place in such circumstances that they cannot be characterized as mistakes or inadvertence. All three events outlined above were deliberate and intentional.

---

[3] "Attempts at sync ups with the mail server were made by a computer whose IP address is registered to the secured IBM facility on Cornwallis Road in Durham, North Carolina. These attempts were made with IBM owned or operated equipment and were directed by IBM employees or agents." ¶16. See also ¶¶ 18 and 20.

Defendant IBM maintains throughout its motion that the complaint should be dismissed because the IP addresses that serve as the basis for the complaint are not IBM controlled machines.[4]  Plaintiff suggests that such an argument is misleading.  A computer server to which IBM may have administrative entry rights, may not be classed by IBM as "controlled."  Nevertheless, it provides an opportunity for IBM to insert and execute the type of programs that are the subject of this complaint.  Depending on the service contract for each account, some may be fully controlled while others may have no control.  However, as long as IBM maintains administrative, password or security access, it is a vehicle by which the harm complained of can be accomplished.

It should be obvious that no computer hacker would utilize a machine or IP address which is registered directly to him.  Nor is it likely that a machine or IP address would be selected merely at random.  It would take much less effort to enter, install and monitor these types of attack and scan programs if the person had administrative or maintenance rights to the equipment utilized in the attacks.  A person with such rights would have easy access to a wide variety of machines--even those not physically located (but whose IP address was still registered) at the Durham facility.  Because the nefarious conduct is so much easier for a person who has this status, the finger points to IBM and a person connected with IBM with sufficient security clearance to engage in these attacks.  Contrary to the implication in the motion to dismiss, it does not make any difference who pays IBM to run that particular server--as long as IBM has potential access to it.

In this regard it should be noted that IBM advertises itself to the world as a full service information technology company.  It provides services that range from turnkey to

---

[4]  Defendant IBM's Memorandum at p. 3.

what is described in the industry as PPP services.[5]  Depending on the individual contract, turn key may provide everything from the server hardware and software to daily maintenance and traffic supervision--all with administrative rights to enter the operating system and install and run programs.  Yet, even under a minimal services contact, such as PPP, IBM may still retain the right to access the machine for security, maintenance or testing.  Plaintiff does not yet have access to those documents to determine the pattern of IBM participation in either the direct attacks or port scans for the IP addresses known at this time.  If the documents sought in the limited discovery demonstrate that IBM personnel had no administrative, maintenance or other rights of access to the machines and their operating systems, then Plaintiff would concede that it could not prove participation of IBM or its employees or agents.  Until that point is reached however, the inference of IBM participation based on the presence and frequency of the IBM registered IP addresses remains strong.  The argument in the motion to dismiss that simply typing in a particular IP address demonstrates the non-involvement of IBM is somewhat disingenuous.  It may be that the current resident of 170.224.176.57 is a third party.[6]  This does not alter the unchallenged allegation that this IP address is registered to IBM.  Whether IBM provides minimum or maximum IT services for this address is a

---

[5] PPP contracts refer to the provision of Power (electrical connection) Pipe (physical access to the internet) and Ping (successful connectivity by packet transmission).

[6] Defendant IBM's invitation to the Court to type in the IP address of 170.224.68.57 in a web browser prompts Plaintiff to suggest that the Court visit the American Registry for Internet Numbers site and search the WHOIS database for the owner of 170.22.68.57. http://www.arin.net.  Such a search reveals that the current registrant is "IBM Raleigh-IP Services Team, 3039 Cornwallis Road, Research Triangle Park, North Carolina"  The WHOIS report reflects that the address was first registered in 1995 and information was updated by IBM last on June 3, 2005.

question that only IBM can answer--and they have not yet done so. It remains undisputed that these addresses are controlled by IBM.

Finally, the Defendant IBM's motion argues that Plaintiff cannot possibly prove liability under theories of respondeat superior or vicarious liability.[7] Plaintiff suggests that this argument is premature at best. The only party that knows the identity of employees of the Durham facility, the scope of their employment and corporate directives concerning their activity that might fall within the complained of conduct is the Defendant IBM. Plaintiff does not have access to this information.

Moreover, there are several exceptions to limitations on vicarious type liability which the Defendant IBM fails to mention in its motion. For example, ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act is given effect as if originally authorized by him. *Rwanda v. Rwanda Working Group*, 227 F.Supp.2d 45, 59 (D.D.C. 2002)(quoting *Lewis v. Washington Metro Area Transit Auth.*, 463 A.2d 666, 672, n.12 (D.C. 1983) and Restatement (Second) of Agency Sec. 82 (1958)).[8] Critically to a Rule12(b)(6) motion, the Circuit court has written that "the question of ratification is one of fact." *Kuwait Airways Corp v. Am. Sec. Bank,* 890 F.2d 456, 465 (D.C.Cir. 1989)

---

[7] A number of cases have found both individuals and corporate defendants liable for this type of activity regardless of who turned on the machine, wrote the program or pressed the enter button on the keyboard. See, e.g. *Creative Computing v. Getloaded, et al.,* 386 F.3d 930 (10th Cir. 2004)(affirming verdict for CFAA claim against both individual and corporate defendants); *E.F.Cultural Travel v. Explorica, Inc.,* 274 F.3d 577 (1st Cir. 2001) (upholding liability under CFAA for both individual employees and corporation); *Pacific Aerospace v. Taylor*, et al, 295 F.Supp.2d 1188 (E.D.Wash. 2003)(upholding CFAA claim against former employee and his new corporate employer); *Peridyne Technology Solutions v. Matheson Fast Freight, et al.* 117 F.Supp.2d 1366 (N.D.Ga 2000) (denying jurisdictional motion to dismiss against both individual and corporate defendants charged with civil CFAA claims).

[8] Affirmed in part and modified in part by *Government of Rwanda v. Johnson*, 409 F.3d 368 (D.C.Cir. 2005)

Nor is ratification the only potential response of Plaintiff to the respondeat superior/vicarious liability issue. For example, courts have concluded that a corporate principle can be held liable for the actions of its managerial agents. See, e.g., *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 78 F.3d 266, 272 (7th Cir. 1996)(liability for contract fraud); *Brady v. Dairy Fresh Products, Co*, 974 F.2d 1149, 1154 (9th Cir. 1992)(RICO liability); *Quick v. Peoples Bank*, 993 F.2d 793, 798 (11th Cir. 1993)(RICO liability).

Finally, to borrow from the criminal side (as Defendant IBM points out, the statutes that serve as the basis for this complaint are originally criminal in origin), ". . .it has long been established that corporations are criminally liable for the crimes of their senior officers, "particularly when the corporation benefits from the officers' offensive conduct." *United States v. Sun Diamond Growers*, 964 F.Supp.2d 846, 890 (D.D.C. 1997) This is so because the acts of a corporation are the acts of its employees acting within the scope of their employment. *U.S. v. Bank of New England, N.A.*, 821 F.2d 844, 856 (1st Cir. 1987), *cert. denied*, 484 U.S. 943 (1987); *United States v. One Parcel of Land*, 965 F.2d 311, 316 (7th Cir. 1992).

Clearly the getaway driver in a bank robbery can be convicted of the offense even if he does not set foot in the bank. Likewise the drug courier can be convicted even if she never opens up the suitcase of drugs. Of course, verdicts of these types are viable only if knowledge and some form of participation or ratification can be demonstrated. The IBM facility at Durham is a secure data center to which the public is not permitted. Knowledge of its operations, security measures, personnel and their activities are closely held proprietary information. Nevertheless, wrongdoers should not escape liability simply

because they are good at keeping secrets. It is only after discovery of these matters is completed that such an argument would be even ripe for discussion.

4. Response to IBM Case Analysis

The most important aspect of all of the cases upon which the Defendant IBM relies upon is that all were summary judgment requests decided after discovery had been completed. As those courts recognized, only after the facts known to all parties can be examined can a decision be made on what can be proven at trial.

For example in *LeBlanc v. Allstate Insurance*, 2000 U.S.Dist. 9351 (E.D.La. 2000)(Def., Ex. A), the opinion makes clear that this decision is the result of considerable discovery and prior motions. *Id* at *7. It was because the court could say that the discovered evidence conclusively proved authorized retrieval of the documents that the summary judgment motion could be granted.

In *Letscher v. Swiss Bank Corporation*, 1997 WL 304895 (S.D.N.Y.) (Def. Ex. B), the summary judgment motion was granted only after complete discovery had been finished. Significantly a prior motion to dismiss had been denied by the same court because of insufficient discovery. *Id* at 5.

The *Pharmatrak* opinion referred to by Defendant IBM serves to underscore this same point. The history of the *Pharmatrak* litigation itself demonstrates the extensive base of facts upon which the court could make a <u>summary judgment</u> decision .[9] Significantly, this opinion--which is actually the second opinion on summary judgment in

---

[9] The *Pharmatrak* litigation was an MDL class action case whose first complaint was filed 3 years before the opinion in 292 F.Supp.2d 263. The matter had by that time generated a prior District Court opinion on summary judgment, 220 F.Supp.2d 4 (S.D.N.Y. 2002) and a reversal by the First Circuit in 2003. 329 F.3d 9

11

this case--makes reference to "thorough" searches of the defendant's computers, testimony by computer experts, deposition of corporate officers and unrestricted access to the defendant's hard drives. It was upon this basis that the district court in *Pharmatrak* could reach its conclusion. No such basis exists in the present case.

Finally, the Defendant IBM points to the decision in *Doe v. Dartmouth-Hitchcock Medical Center*, 2001 WL 873063 (D.N.H. 2001) as a reason to dismiss the corporate wrongdoer in this matter. Plaintiff agrees that when IBM chooses to reveal its internal information, it may be able to claim the same protection that the medical center claimed when a doctor violated the CFAA statute in *Doe*. It cannot do so now however. Because *Doe* was also a summary judgment motion, the court had a complete record upon which to make a decision.[10]

Moreover, the *Doe* decision is not the final word in corporate responsibility for CFAA violations. *Charles Schwab & Co. v. Carter, et. al.*, 2005 U.S.Dist.LEXIS 21348 (N.D. Ill, September 27, 2005)(denying 12(b)(6) motion to dismiss and holding CFAA does permit vicarious corporate liability);[11] *Nexans Wires S.A. v. Sark-USA, Inc*, 319 F.Supp.2d 468, 472 (S.D.N.Y. 2004)(dismissing CFAA claim on summary judgment, but distinguishing *Doe* and holding corporate defendants liable if other factors would have been met).

Plaintiff suggests a more analogous decision can be found in *Physicians Interactive v. Lathian Systems et. al.*, 2003 U.S.Dist.Lexis 22868, 2003 WL 23018270

---

[10] The opinion makes reference to several affidavits and the docket sheet for CIV 00-100 reflects an agreed to discovery plan which apparently had been met with only minor objections by the time the summary judgment motions were filed.

[11] Plaintiff has attached a copy of this opinion as Exhibit 1.

(E.D.Va. December 5, 2003).[12] In the context of reviewing a request for restraining order and preliminary injunction, the district court faced some of the same issues present here. It found the tracking and ownership of IP addresses involved in hacking attacks sufficient enough to withstand a motion to dismiss and also held individual and corporate parties responsible within the CFAA.

Plaintiff suggests the same result should be reached in this case.

5. Request for Preliminary Limited Discovery

Simplified notice pleading under the Federal Rules, ". . . is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48. Plaintiff acknowledges that it does not presently have all the facts to support all its claims. There is a good reason for that however--these facts are closely held information by the Defendant IBM who has in the past declined to reveal the information.

Plaintiff urges this Court to recognize that nearly all of what the Defendant IBM insists in its motion that the present complaint lacks are facts that are known only to IBM. Because of the unique nature in which the electronic communication world now works, Plaintiff must seek preliminary discovery from the only source available. Plaintiff must seek this information at this stage because of the electronically ephemeral nature of the information. This is particularly true of a search to determine the identity of the John Doe listed in the complaint. See, for example, *Alvis Coatings Inc. v. John Does One*

---

[12] Plaintiff has attached a copy of this opinion as Exhibit 2.

*Through Ten,* 2004 WL 2904405 ( W.D.N.C. Dec. 2, 2004)[13](denying motion to quash subpoena for IP information from ISP based on limited and expedited discovery motion). While the courts in this jurisdiction, to Plaintiff's knowledge, have not faced exactly this same question, they have addressed and granted limited preliminary discovery in other contexts. *Artis v. Greenspan,* 223 F.Supp.2d 149 (D.D.C. 2002) (denying motion without prejudice and permitting limited discovery to resolve jurisdiction questions) *Millicom International Cellular v. Republic of Costa Rica,* 1997 U.S.Dist.Lexis 12622 (D.D.C. August 18, 1997)[14](permitting preliminary discovery to resolve FSIA dismissal motion in interests of expediting litigation)

Plaintiff would seek the following discovery from Defendant IBM: Records for the calendar year of 2005 which indicate days and hours worked or otherwise admitted for IBM employees and managers at the Durham facility 2) work records or other documents reflecting days and hours worked for any contract employee at Durham; 3) administrative rights logs or documents for the 82 IP addresses already supplied to IBM which engaged in the scans and attacks; 4) maintenance logs or documents for the 82 IP addresses already supplied to IBM which engaged in the scans or attacks listed in the complaint; 5) any documents reflecting the assignment of IBM personnel for any reason to the 82 IP address previously supplied to IBM; 6) router logs or any other type of logs which would reflect electronic traffic in or out of the Durham facility for the 82 IP addresses; 7) any type of log for traffic for any of the 82 IP addresses which are registered to machines that were outside the Durham facility for the calendar year 2005;

---

[13]  Plaintiff has attached a copy of this opinion as Exhibit 3.

[14]  Plainitff has attached a copy of this opinion as Exhibit 4.

8) access to the hard drives[15] for purposes of forensic downloading and analysis for the machines that were linked to the following addresses during November of 2005: 170.224.176.49, 170.224.176.50 and 170.224.176.57; 9) documents reflecting the discharge of any employee or contractor from November 2005 through April 2006 and 10) all security reviews, event reports or recommendations concerning the incidents which Plaintiff has previously reported to Defendant IBM that are the subject of this complaint.

Although specific, standards for evaluating expedited discovery motions are not set out in the Federal Rules of Civil Procedure, the Rules provide the court with authority to direct expedited discovery in limited circumstances. As another court faced with a Rule 12(b)(6) motion noted, Federal Rules of Civil Procedure 26(d), 30(a), 33(b), 34(b) and 36 give the Court the power to adjust the timing requirements imposed under Rule 26(d) and if warranted, to expedite the time for responding to the discovery sought. *Physicians Interactive v. Lathian Sys.*, 2003 U.S.Dist.LEXIS 22868 (Attached Exhibit 3).

6. Conclusion

Plaintiff believes that it has pled sufficient facts to retain Defendant IBM in this matter. The inference from the use of their addresses in a sustained and sophisticated attack and scan of different computers belonging to or associated with the Plaintiff demonstrates their intentional participation in this activity. The possibility that these IP addresses may be leased to third party customers of IBM does not eliminate the possibility of IBM's responsibility.

---

[15] An example of the information that can be obtained from a forensic examination can be found in *Four Seasons Hotels and Resorts v. Consorcio Bar, S.A.*, 267 F.Supp.2d 1268, 1294-1301 (S.D. Fla 2003) Findings of fact 212-250. *Rev'd other grounds.* 377 F.3d 1164 (11th Cir. 2004)

In the event that the Court does identify a deficiency in the original complaint, Plaintiff seeks leave to file an amended complaint.

In the event that the Court requires the Plaintiff to establish specific facts in support of its allegations of IBM involvement, Plaintiff would seek leave to conduct the preliminary discovery as outlined is section 5 of this pleading.

**WHEREFORE**, Plaintiff respectfully prays that the Defendant IBM's motion to dismiss be denied.

DATED this 16th day of June, 2006

          Respectfully submitted,

          Dennis M. Hart (935643)

          Butera & Andrews
          Attorneys for Plaintiffs
          1301 Pennsylvania Avenue N.W.
          Suite 500
          Washington, D.C. 2004
          202.347.6875

United States District Court
For the District of Columbia

BUTERA & ANDREWS,
           Plaintiff

v.                                           1:06cv00647(RBW)

INTERNATIONAL BUSINESS MACHINES
CORPORATION, et al.,
           Defendants

**ORDER**

This matter having come before the Court on the Motion to Dismiss for Failure to State a Claim by Defendant IBM pursuant to Rule 12(b)(6) and upon consideration of the Opposition of the Plaintiff and the record herein, it is this ___ day of _____, 2006, hereby ordered that the motion is denied.

                                                                      _____
                                                                      Hon. Reggie B. Walton
                                                                      United States District Judge