United States District Court
For the District of Columbia


BUTERA & ANDREWS,
                    Plaintiff


        v.                                    1:06cv00647(RBW)

INTERNATIONAL BUSINESS MACHINES
CORPORATION, et al.,
                    Defendants


**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO
STATE A CLAIM AND REQUEST FOR LIMITED EXPEDITED DISCOVERY**


Plaintiff's Exhibit 4

5 of 100 DOCUMENTS

**Millicom International Cellular, S.A., Millicom Costa Rica, S.A., and Communicaciones Celulares, S.A., Plaintiffs, v. Republic of Costa Rica, Instituto Costarricense de Electricidad, and Radiografica Costarricense, S.A., Defendants.**

Civil Action No. 96-315 (RMU)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*1997 U.S. Dist. LEXIS 12622*

August 18, 1997, Decided
August 18, 1997, Filed

**DISPOSITION:** [*1] Plaintiffs' Motion for Preliminary Discovery GRANTED IN PART AND DENIED IN PART; and defendants' motion to dismiss DENIED WITHOUT PREJUDICE.

**COUNSEL:** For MILLICOM INTERNATIONAL CELLULAR, S.A., MILLICOM COSTA RICA, S.A., COMMUNICACIONES CECULARES, S.A., plaintiffs: Peter Jonathan Kahn, Martin C. Calhoun, WILLIAMS & CONNOLLY, Washington, DC.

For REPUBLIC OF COSTA RICA, INSTITUTO COSTARRICENSE DE ELECTRICIDAD, RADIOGRAFICA COSTARRICENSE, S.A., defendants: Christopher M. Curran, Charles N. Brower, WHITE & CASE, Washington, DC.

**JUDGES:** Ricardo M. Urbina, United States District Judge.

**OPINIONBY:** Ricardo M. Urbina

**OPINION:**

### MEMORANDUM ORDER

**GRANTING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY DISCOVERY AND DENYING IT IN PART; DENYING THE DEFENDANTS' MOTION TO DISMISS WITHOUT PREJUDICE AND SCHEDULING FUTURE PROCEEDINGS**

### I. INTRODUCTION

This matter comes before the court upon the plaintiffs' motion for leave to take preliminary discovery pursuant to the *Federal Rule of Civil Procedure 26(d)* and (f). The defendants have jointly moved to dismiss the plaintiffs' First Amended Complaint. The plaintiffs seek information regarding issues purportedly raised by the defendants' motion to dismiss. They also [*2] petition the court to stay a ruling on the defendants' motion until after the requested discovery has been completed. They therefore request an extension of time within which to file their opposition to the defendant's motion.

The plaintiffs in this action are three foreign corporations (hereinafter collectively referred

to as Millicom) that specialize in the operation of cellular telephone systems. n1 The defendants are the Republic of Costa Rica, Instituto Costarricense de Electricidad (ICE), and Radiografica Costarricense, S.A. (Radiografica). n2 Millicom alleges in its First Amended Complaint that after it developed and installed a cellular telephone system in Costa Rica, the defendants unlawfully prevented Millicom from competing in the local cellular services market. Pls.' First Am. Compl. at P 3. The defendants, in turn, have moved to dismiss the First Amended Complaint on the grounds that they are foreign sovereigns within the meaning of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § § 1602-11 (1976), and are therefore immune from suit. They also argue, in the alternative, that this court should not entertain this matter pursuant to the Act of State and forum non [*3] conveniens doctrines.

> n1 Plaintiff Millicom International Cellular, S.A. (Millicom International) is a Luxembourg corporation. Plaintiffs Millicom Costa Rica, S.A. (MCR) and Communicaciones Celulares, S.A. (COMCEL) are Costa Rican corporations.
> n2 ICE is an agency or an instrumentality of Costa Rica. Radiografica is a corporation that is wholly owned by ICE.

Millicom has not submitted a memorandum in opposition to the defendants' motion to dismiss. Instead, it has requested leave to take preliminary discovery. Specifically, Millicom requests information relating to: (1) the defendants' FSIA defense; (2) the defendants' Act of State defense; (3) certain foreign law issues applicable to the plaintiffs' claims; (4) the defendants' forum non conveniens defense; and (5) the defendants' connections with the United States that might meet the minimum contacts

requirement of the Fifth Amendment Due Process Clause. In response, the defendants contend that the FSIA exempts them from the burdens of litigation, [*4] including discovery. They therefore assert that the court should not allow discovery until Millicom has responded to their motion to dismiss and the court has assured itself that it has jurisdiction over the parties.

The parties' submissions raise a discrete issue: Whether the court should allow preliminary discovery in cases where the defendant has raised a FSIA defense. As discussed in detail below, the court concludes that plaintiffs do, in fact, have a right to conduct preliminary discovery in such cases if it is directed towards resolving the issue of whether FSIA immunity applies. If plaintiffs set forth non-conclusory allegations that, if supplemented with additional evidence, would materially affect the court's analysis vis-a-vis the FSIA, then the court should permit limited discovery. In this case, one of the issues Millicom raises in its discovery motion is relevant to the FSIA question. Consequently, plaintiffs' motion for preliminary discovery shall be granted in part and denied in part. The court will permit Millicom to conduct discovery on the defendants' contacts in the U.S. relating to Millicom's cellular telephone business. The court denies all of Millicom's other [*5] discovery requests.

## II. BACKGROUND

Millicom has brought suit against the defendants alleging that they have wrongfully monopolized the Costa Rican cellular services market, unlawfully expropriated Millicom's property interests in the Costa Rican cellular network, breached contractual obligations owed to Millicom, breached promises and assurances made to Millicom, and wrongfully interfered with the prospective economic advantage that Millicom had acquired in the Costa Rican cellular services market. As a basis for each of these charges, Millicom maintains that it developed, installed, and operated a cellular tele-

1997 U.S. Dist. LEXIS 12622, *

phone system with the knowledge and official approval of the Costa Rican Government and that the defendants subsequently denied Millicom access to that system.

Millicom International is one of the world's leading companies in designing, developing, installing, and operating cellular telephone systems. MCR and COMCEL are cellular companies that are closely affiliated with Millicom International. n3 In 1987, Millicom International, MCR and COMCEL, took steps to cooperatively develop, install and operate a cellular telephone system within Costa Rica. On various occasions, [*6] the Costa Rican government expressed its approval of the proposed system. Initially, it designated certain radio frequencies to be used in the cellular network and helped Millicom International secure insurance from the Overseas Private Investment Corporation (OPIC) for Millicom's investments in the system. It then assisted Millicom International and MCR in their successful efforts to obtain loans from the International Finance Corporation (IFC). In May 1989, the first subscribers signed on to Millicom's cellular system.

n3 Unless stated otherwise, the term "Millicom International" shall include plaintiff Millicom International Cellular, S.A. and a predecessor in interest, Millicom, Incorporated.

ICE is an instrumentality or agency of the Costa Rican government that controls the public land-line based telephone services market in Costa Rica. In September 1991, ICE made its first public announcement that it was developing its own cellular telephone system. Shortly thereafter, Millicom allegedly became the [*7] target of anti-competitive behavior. Protesting COMCEL's license to use certain radio frequencies, ICE's engineer's union filed an unconstitutionality action in the Costa Rican court

system seeking to strip Millicom of the frequencies used for its cellular network. In addition, from at least February 1992 onwards, ICE is alleged to have repeatedly ignored or delayed Millicom's requests to be provided access to cellular telephone numbers, which are essential components of a cellular telephone system.

In October 1993, the Costa Rican Constitutional Court ruled that the grant of the radio frequencies to COMCEL was unconstitutional and therefore void. n4 The Court, however, stayed its ruling until May 9, 1995. Until that date, Millicom and members of the Costa Rican Government made various attempts to reach an agreement by which Millicom could continue to compete in the Costa Rican cellular services market. United States government officials also met in the United States with members of the Costa Rican government in an effort to bring about a resolution to the conflict. The parties reached a compromise that involved a partnership between Millicom and Radiografica (an ICE subsidiary) that [*8] would allow Millicom access to radio frequencies after the Constitutional Court's ruling came into effect. On April 12, 1995, Millicom International, MCR, Radiografica, and ICE signed a contract establishing the partnership. Despite the new arrangement, however, Millicom alleges that Radiografica and ICE conspired to exclude it from the Costa Rican cellular services market. Millicom asserts that both Radiografica and ICE failed to uphold the terms of the contract, and that this failure caused Millicom to be unable to provide cellular services to its subscribers past the Constitutional Court's deadline of May 9, 1995.

n4 The court based its decision on the grounds that the Costa Rican Constitution forbids any private party from using Costa Rican natural resources, including radio frequencies, unless the Costa Rican

National Assembly specifically authorizes such use through legislation. This judgment was published in the Costa Rican Judicial Bulletin for the Constitutional Chamber of the Supreme Court of Justice on May 10, 1994.

[*9]

Millicom brings suit against the defendants based on the following causes of action: (i) monopolization in violation of Section 2 of the Sherman Act, *15 U.S.C. § 2;* (ii) monopolization by denial of access to essential facility in violation of Section 2 of the Sherman Act, *15 U.S.C. § 2;* (iii) conspiracy to monopolize in violation of Section 2 of the Sherman Act, *15 U.S.C. § 2;* (iv) conspiracy to restrain trade in violation of Section 1 of the Sherman Act, *15 U.S.C. § 1;* (v) breach of contract; (vi) promissory estoppel; (vii) unlawful expropriation of aliens' property; and (viii) tortious interference with prospective economic advantage. Millicom seeks damages from the defendants in excess of $ 134 million -- trebled pursuant to Section 4 of the Clayton Act, *15 U.S.C. § 15,* and in an amount to be established at trial -- plus interest, attorneys' fees, and expenses and costs.

### III. DISCUSSION

### A. The Foreign Sovereign Immunities Act and Discovery

Millicom seeks the right to conduct preliminary discovery against defendants who have raised a sovereign immunity defense. A foreign state is "immune from the jurisdiction of the United States and of the State" unless the foreign [*10] state's conduct falls within one of the FSIA's exceptions. *28 U.S.C. § § 1604,* 1605, 1607; *Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434, 102 L. Ed. 2d 818, 109 S. Ct. 683 (1989).* A foreign state that obtains immunity under the FSIA should also be free from the burdens of litigation, including discovery. "[Courts] should closely control and limit the discovery and fact-

finding so as to avoid frustrating the significance and benefit of . . . immunity from suit." *Foremost-McKesson, 284 U.S. App. D.C. 333, 905 F.2d 438, 449 (D.C. Cir. 1990)* (internal citations omitted). However, the burden of proving that a given act does not fall within the FSIA jurisdictional exceptions rests upon the defendants. *Transamerican S.S. Corp. v. Somali Democratic Republic, 247 U.S. App. D.C. 208, 767 F.2d 998, 1002 (D.C. Cir. 1985).*

The FSIA presumes that foreign states are immune from suit in United States courts. Exceptions to this immunity exist for cases dealing with waiver of immunity, *28 U.S.C. § 1605*(a)(1); certain commercial activities, *28 U.S.C. § 1605*(a)(2); expropriation of certain types of property, *28 U.S.C. § 1605* (a)(3); cases concerning rights to immovable [*11] property situated in the United States, *28 U.S.C. § 1605*(a)(4); actions based in tort, *28 U.S.C. § 1605*(a)(5); or admiralty claims, *28 U.S.C. § 1605*(b). Millicom alleges that the commercial activity, expropriation, and noncommercial tort exceptions apply to the defendants' actions in this case. Millicom, however, limits its discovery request to issues relating to the commercial activity exception.

The defendants argue that because, in their view, the FSIA shields them from suit, the court should deny Millicom's discovery request. They maintain that they should not be subjected to the burdens of litigation until the court has addressed the merits of their motion to dismiss. Millicom refutes the defendants' position on two counts. First, with regard to its FSIA jurisdictional discovery requests, Millicom argues that the defendants are the sole possessors of information that would facilitate the court's determination of whether the FSIA commercial activity exception applies in this case. Second, with regard to the Act of State doctrine, foreign law, forum non conveniens, and minimum contacts requests. Millicom asserts that because the defendants have mischaracterized certain material [*12] events and

have submitted evidence to this court that is beyond scope of the pleadings, preliminary discovery is necessary for a fair determination of the merits of the defendants' motion to dismiss.

After a careful review of the parties' submissions and the relevant law, the court concludes that plaintiffs who are facing a motion to dismiss on the basis of foreign sovereign immunity have a right to conduct preliminary discovery, as long as it is reasonably calculated to elucidate whether an FSIA jurisdictional exception applies. *See Foremost-McKesson, 284 U.S. App. D.C. 333, 905 F.2d 438 at 449* (reversing the denial of a foreign sovereign's motion to dismiss because of a "dearth of fact-finding" and remanding for further development of the facts. The court stated that "the parties have the responsibility, and must be afforded a fair opportunity, to define issues of fact and law, and to submit evidence necessary to the resolution of the issues") (internal citations omitted); *see also Junquist v. Nahyan*, Civil Action 96-7220, 11 (stating that "where a motion to dismiss is based on a claim of foreign sovereign immunity, which provides protection from suit and not merely a defense **[*13]** to liability . . . the court must engage in sufficient pretrial factual and legal determinations to satisfy itself of its authority to hear the case before trial") (internal citations omitted); *Gilson v. Republic of Ireland, 221 U.S. App. D.C. 73, 682 F.2d 1022, 1026 (D.C. Cir. 1982)* (reversing a dismissal of plaintiff's claim for lack of jurisdiction under the FSIA because "the facts as alleged -- and generously interpreted -- [made] a dismissal at least premature in light of the dearth of fact-finding done by the district court"); *Filus v. LOT Polish Airlines, 907 F.2d 1328 (2nd Cir. 1990)* (reversing the dismissal of a plaintiff's suit under the FSIA on the grounds that the lower court did not have enough information to determine whether the FSIA exceptions applied. The court held that: "Generally a plaintiff may be allowed limited discovery with respect to the jurisdictional issue; but until she has shown a reasonable basis for assuming jurisdic-

tion, she is not entitled to any other discovery"); *Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445 (6th Cir. 1988)* (reversing a dismissal of plaintiff's suit pursuant to the FSIA and remanding for additional discovery **[*14]** to ensure that issues would be ripe for resolution).

The scope of discovery should be limited so as not to defeat the purpose and benefit of the FSIA. *Id. at 449*. Accordingly, Millicom's request for FSIA-related discovery shall be granted only if Millicom has presented nonconclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA. *See Foremost-McKesson, 284 U.S. App. D.C. 333, 905 F.2d 438 at 448* (requiring plaintiff to submit additional proof supporting conclusory allegations to avoid dismissal); *El-Fadl v. Central Bank of Jordan, 316 U.S. App. D.C. 86, 75 F.3d 668, 671 (D.C. Cir. 1996)* (stating that plaintiff was not entitled to discovery against a defendant raising a FSIA defense in the "absence of any showing" by plaintiff that the defendant might be an agency or instrumentality within the meaning of the FSIA); *Filus, 907 F.2d at 1333* (requiring sovereign defendant to respond to plaintiff's interrogatories because the plaintiff's allegations were not "wholly fanciful"); *Goodman Holdings v. Rafidain Bank, 307 U.S. App. D.C. 79, 26 F.3d 1143, 1147 (D.C. Cir. **[*15]** 1994)* (refusing plaintiff's request for jurisdictional discovery because additional facts would not alter the court's analysis as to whether the FSIA's commercial activity exception applied).

## B. Plaintiffs' Request for Discovery and Defendants' Foreign Sovereign Immunity Defense

The FSIA exception at issue in Millicom's motion for preliminary discovery is Section 1605(a)(2), which provides, in relevant part, that a foreign state is not immune from suit in any case:

1997 U.S. Dist. LEXIS 12622, *

in which the action is based upon a commercial activity carried on in the United States by the foreign state . . . *or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.*

*28 U.S.C. § 1605*(a)(2) (emphasis added). A "Foreign state" includes certain "agencies or instrumentalities of a foreign state." *See 28 U.S.C. § 1603*(a), (b). A "commercial activity" is "either a regular course of commercial conduct or a particular commercial transaction or act." *28 U.S.C. § 1603*(d). Courts have generally held that an activity is commercial if it "is of a type that a private [*16] person would customarily engage in for profit," *Callejo v. Bancomer, S.A., 764 F.2d 1101, 1107 (5th Cir. 1985),* without regard to its ultimate purpose. *28 U.S.C. § 1603*(d); *Republic of Argentina v. Weltover, 504 U.S. 607, 614, 119 L. Ed. 2d 394, 112 S. Ct. 2160 (1992).* An act that has a "direct effect in the United States" is one that causes an "immediate consequence," without regard to the foreseeability or substantiality of that effect. *See Weltover, 504 U.S. at 618* (holding that a unilateral rescheduling of bond payments had a "direct effect" within the meaning of § 1605(a)(2) because the United States was designated as the place of performance for the foreign sovereign's ultimate contractual obligations). Finally, an action is "based upon a commercial activity" if that activity is an "element[] of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia v. Nelson, 507 U.S. 349, 356, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993).*

Millicom asserts that in order to determine whether Section 1605(a)(2) applies in this case, the court should permit preliminary discovery.

Specifically, Millicom seeks information relating [*17] to: (i) the structural relationship between ICE and Radiographica; (ii) the defendants' telecommunications network and its connections with the U.S.; and (iii) the defendants' contacts in the U.S. relating to Millicom's cellular telephone business. n5

n5 More particularly, the requested discovery includes: (i) ICE's status as an instrumentality or agency of Costa Rica; (ii) contracts or other agreements made between the defendants and U.S. telecommunications companies that provide the defendants with access to telecommunications networks operating in the U.S.; contracts or other agreements that provide for the purchase or sale of goods or services to or from U.S. companies; contracts or other agreements between ICE and Radiografica that allow them to share with each other access to U.S. telecommunications networks; total volume of telephone calls made between the United States and Costa Rica; and (iii) defendants' contacts with OPIC and IFC; negotiations between defendants and Costa Rican government officials, on the one hand, and their U.S. counterparts on the other.

[*18]

### 1. Foreign State

Millicom has requested discovery to determine whether ICE is an agency or instrumentality of Costa Rica, as Millicom alleges, or a political subdivision of the state. The status of ICE will, in turn, decide the question of whether Radiografica can invoke the FSIA as a complete defense. If ICE is a political subdivision of the state, then Radiografica, as a wholly owned entity of ICE, would be entitled to foreign sovereign immunity because of its status

as an instrumentality or agency of Costa Rica. n6 However, if ICE is an instrumentality or agency of Costa Rica (as opposed to a political subdivision), then Radiografica may be unable to raise the FSIA defense. The defendants have conceded, for the purposes of the motion for preliminary discovery, that ICE is an instrumentality or agency of Costa Rica rather than a political subdivision. As such, Radiografica's status as a foreign state is a purely legal question. The court therefore denies Millicom's request for discovery on this issue.

> n6 For an entity to be an agency or instrumentality under the FSIA, it must, *inter alia*, have a majority of its shares owned by a foreign state or political subdivision thereof. *See* § 1603(b).

[*19]

### 2. Commercial Activity

Under Section 1605(a)(2), a defendant cannot rely on the FSIA if the plaintiff's action is based upon the defendant's commercial activity within the United States. *28 U.S.C. § 16059*(a)(2). Millicom therefore asserts that its action is based upon the defendants' commercial operation of a communications network in the United States, which relays telephone calls between the United States and Costa Rica. Thus, when ruling on the motion to dismiss, the court must determine whether the defendants' commercial activity in this country gives rise to Millicom's cause of action. Millicom maintains that information regarding the defendants' interconnectivity arrangements with U.S. telecommunications companies will aid the court in making this determination.

The defendants' interconnectivity arrangements with U.S. telecommunications companies are irrelevant to the question of whether Millicom bases its action upon the defendants'

commercial activity within the United States. Such arrangements are not an element of any of the claims brought against the defendants: Millicom's action is not "based upon" the defendant's interconnectivity arrangements. Millicom is suing [*20] the defendants for wrongful monopolization of the Costa Rican cellular services market unlawful expropriation of Millicom's property interests, breach of contractual obligations, breach of promises and assurances, and wrongful interference with prospective economic advantage. Each of these claims relates to the defendants' acts taken with regard to the telecommunications network *in Costa Rica*. The fact that the defendants have arranged for interconnectivity between Costa Rica and United States does not make that arrangement an "element[] of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Saudi Arabia v. Nelson, 507 U.S. 349, 356, 123 L. Ed. 2d 47, 113 S. Ct. 1471 (1993)*. While the *extent* of Millicom's alleged injury is directly related to its inability to transfer calls to the United States, that injury was *caused* solely by its lack of access to the Costa Rican network. n7 Additional information regarding defendants' communications network in the United States is irrelevant to court's determination of whether the defendants' actions fall within the ambit of Section 1605(a)(2). Consequently, the court will not permit preliminary [*21] discovery on this issue.

> n7 This distinction may appear nominal at first, but if the court were to accept Millicom's formulation as a justifiable basis for asserting jurisdiction over a foreign state, the consequences would be far reaching. Because most, if not all, countries will have communications links with the United States, virtually any foreign telecommunications agency could be subject to suit by a foreign plaintiff in federal court so long as the action is re-

lated to network access. Such a liberal interpretation of the FSIA contravenes the principle of foreign sovereign immunity embodied in the statute.

### 3. Direct Effect

Under Section 1605(a)(2) a defendant cannot successfully invoke sovereign immunity under the FSIA when a plaintiff's action is based upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Millicom maintains that its action [*22] is based upon the defendants denying Millicom access to the Costa Rican telecommunications network, that this act was connected with the defendants' use of the network to relay calls between Costa Rica and the United States, and that Millicom's exclusion caused a direct effect in the United States. n8 Millicom therefore seeks discovery on issues related to the defendants' interconnectivity arrangements with U.S. companies and the defendants' contacts in the U.S. in relation to Millicom's cellular telephone business.

n8 Millicom claims that the "direct effect" occurred because calls utilizing Millicom's cellular telephone services were not made between the United States and Costa Rica and because Millicom's Costa Rican investment was partially financed by the OPIC and the IFC.

In order for the court to ascertain whether the FSIA applies, it will need to determine, inter alia, whether the defendants' operation of a telecommunications network is actually a "commercial activity" within the meaning of Section [*23] 1605(a)(2), and whether their refusal to allow Millicom access to that net-

work did in fact have a "direct effect" on the United States. With respect to Millicom's interconnectivity discovery request, the court concludes that additional information regarding the extent of Millicom's contracts or other agreements with U.S. telecommunications companies is not needed at this juncture. Millicom has already alleged, with a great deal of specificity, that the defendants have complex relations with U.S. companies. It now seeks additional information on this matter because "only discovery can determine the full extent of the defendants' operations in, and contacts with, the United States." Pls.' Mot. for Prelim. Disc. and for Extension of Time at 12 (emphasis added). However, the extent of the defendants' contacts with the United States will not determine whether Section 1605(a)(2) applies. Rather, the issue the court must address is whether the nature of the alleged contacts is truly commercial, and whether the relationships are "in connection with" the defendants denying Millicom access to their network. Millicom's discovery request will not elucidate this issue because the defendants [*24] have already acknowledged the existence of these contacts. The relevance of the contracts is purely a legal issue. Accordingly, the court denies Millicom's interconnectivity discovery request.

Millicom also petitions the court for the right to conduct discovery on the defendants' commercial relationships in the U.S. vis-a-vis Millicom's cellular telephone business. With respect to these relationships, only the defendants' connection with the OPIC and IFC are relevant to the FSIA jurisdiction question. n9 Millicom alleges that the defendants made various representations to those organizations to encourage their support of Millicom's Costa Rican investments. These representations, the nature of which can only be determined through discovery, may well decide the question of whether the defendants actions injured the OPIC and the IFC, thereby creating a direct effect on the United States within the meaning of Section 1605(a)(2). Additional information

on this issue will facilitate the court's FSIA jurisdictional analysis. Accordingly, the court grants this segment of Millicom's discovery request.

n9 For example, Millicom seeks information regarding the defendants' negotiations between the defendants and U.S. government officials only as they pertain to the issues of personal jurisdiction.

[*25]

### C. Millicom's Requests for Discovery Relating to the Act of State Doctrine, Foreign Law, Forum Non Conveniens and Minimum Contacts

The parties shall engage in a brief period of discovery after which the defendants shall renew their motion to dismiss. If the court concludes that the FSIA operates as a complete defense, it will dismiss this case. On the other hand, if it concludes that the FSIA does not shield the defendants from suit, it will then determine if additional discovery is needed on these issues. This process will expedite this litigation. If the court concludes that the defendants conduct falls within the ambit of one of the FSIA's exceptions, the defendants are entitled to immediately appeal the court's decision. See Foremost-McKesson, 905 F.2d at 443. Consequently, it would be inefficient for the court to delve into matters that may prove to be unnecessary.

### V. CONCLUSION

For the foregoing reasons, it is this 18th day of August 1997,

**ORDERED** that Plaintiffs' Motion for Preliminary Discovery be hereby **GRANTED IN PART AND DENIED IN PART**; and it is

**FURTHER ORDERED** that the parties engage in discovery on the issue of the defendants' [*26] representations made to the OPIC and the IFC regarding Millicom's Costa Rican business venture. The discovery period will extend for 30 calendar days from the date of this memorandum order. If any dispute arises, the parties are to telephonically contact the court prior to the filing of any motions; and it is

**ORDERED** that the defendants' motion to dismiss be and is hereby **DENIED WITHOUT PREJUDICE**; and it is

**FURTHER ORDERED** that the defendants file a renewed motion to dismiss on or before **September 30, 1997**. Millicom's Opposition is due on **October 14, 1997**; and the defendants' reply is due on **October 22, 1997**; and it is

**ORDERED** that a status hearing be and is hereby set on **November 25, 1997 at 9:00 a.m..**

### SO ORDERED.

Ricardo M. Urbina

United States District Judge