# EXHIBIT G

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1997 WL 16066 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Donna TASSO, Plaintiff,
v.
PLATINUM GUILD INTERNATIONAL and Jacques Luben, Defendants.
**No. 94 CIV. 8288 (LAP).**

Jan. 16, 1997.

### MEMORANDUM AND ORDER

PRESKA, District Judge.

*1 Plaintiff Donna Tasso ("Tasso") brought her original Complaint against defendants Platinum Guild International (USA), Inc. ("PGI") and Jacques Luben ("Luben"), asserting several claims for "sexual harassment" and several claims in tort, including assault, battery, intentional infliction of emotional distress, defamation, and intentional interference with prospective economic advantage. Defendants then filed a motion to dismiss on the grounds that the Complaint failed to state a cause of action under Federal Rule of Civil Procedure 12(b)(6) and failed to meet the minimal pleading requirements of Federal Rule of Civil Procedure 8(a).

On December 15, 1995, I dismissed the Complaint without prejudice after a fairly lengthy discussion with counsel for both sides regarding the infirmities of the Complaint as it then existed. All participants agreed that the one year statute of limitations applicable to intentional torts governed plaintiff's claims of assault, battery, and intentional infliction of emotional distress. In addition, I advised plaintiff's counsel that the defamation claim was insufficiently specific and the claim for intentional interference with prospective economic advantage required an allegation that the defendants performed the acts at issue out of an exclusive intention to injure the plaintiff rather than for any legitimate purpose. The parties further agreed that plaintiff was an independent contractor and therefore ineligible to bring an employment discrimination claim against her former client. Finally, I instructed plaintiff's counsel with respect to the allegations necessary to impose vicarious liability against PGI for the actions of its employee, defendant Luben. I concluded by directing plaintiff to take "her best shot in the next complaint," in light of the comprehensive exegesis that took place at the argument.

In response, plaintiff filed a "First Amended Complaint for Damages, Injunctive and Declaratory Relief and Other Appropriate Relief and Demand for Jury Trial" on January 24, 1996. The defendants again moved to dismiss the amended claims as deficient under Fed.R.Civ.P. 8(a) and Fed.R.Civ.P. 12(b)(6); the plaintiff opposed the motion. For the reasons that follow, the motion is denied in part and granted in part.

### BACKGROUND

Tasso was a vice-president at PR, NY, a public relations firm which is not a party to this action. PGI had been Tasso's principal client and had maintained its account under her management throughout the progress of her career, following her from firm to firm as she changed employers. Tasso's main contact at PGI was defendant Luben. The Amended Complaint alleges that beginning in August 1988 and "continuing thereafter the Defendant Luben began approaching the Plaintiff making derogatory comments to the Plaintiff that became increasingly sexual in nature." (Amended Complaint, ¶ 11). According to plaintiff, Luben's campaign of harassment was directed not only at her but at other female employees and independent contractors of PGI and included unwanted touching, crude remarks and sexual innuendo, and continual threats of termination aimed at women who refused to have sex with him. (Amended Complaint, ¶

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1997 WL 16066 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

14). Plaintiff further asserts that PGI did nothing to curb Luben's outrageous conduct. (Amended Complaint, ¶ 38). Plaintiff alleges that she told Luben to stop his inappropriate behavior and that, thereafter, defendant Luben "terminated" her, by which I assume plaintiff means that PGI ceased to use her services as an independent contractor. (Amended Complaint, ¶ 15). Plaintiff indicates that the severance of the parties' business relationship occurred after she became pregnant. (Amended Complaint, ¶¶ 15, 16). She asserts that Luben took this step "with the consent and acting under the authority of" PGI. (Amended Complaint, ¶ 20).

*2 The plaintiff apparently entered into discussions with a third party, Gold Corp., on or about August 15, 1994 regarding the possibility that Gold Corp. would become a client of plaintiff's firm. (Amended Complaint, ¶ 19). While these discussions were underway, Luben allegedly made public statements questioning plaintiff's work habits, prices, ethics, and public relations expertise. (Amended Complaint, ¶ 22). Plaintiff alleges that the false and defamatory statements made by Luben included charges that:
(1) the plaintiff double billed for her services;
(2) the plaintiff was incompetent and produced no genuine work product, instead delegating the work to her subordinates;
(3) the plaintiff was "bitchy" and did not get along with others;
(4) the plaintiff was incompetent and did not know how to structure a program;
(5) the plaintiff was a cheat who lied about the input of others and took credit for work that was not her own.

(Amended Complaint, ¶ 29). The plaintiff further asserts that Luben told Gold Corp. that it would receive no business from PGI, "a significant producer of business in the field," if Gold Corp. retained the plaintiff as its public relations agent. (Amended Complaint, ¶ 22). Following these statements, Gold Corp. curtailed all contact with the plaintiff, allegedly "out of fear of retribution by the Defendant Luben and the Corporate Defendant." (Amended Complaint, ¶ 25). Plaintiff characterizes defendants' actions as "willful and malicious," (Amended Complaint, ¶¶ 26, 27) and contends that the statements "were made with malice in such a way as to purposely disgrace or discredit the Plaintiff in her attempt to become reemployed in the advertising profession." (Amended Complaint, ¶ 31).

The above-described allegations appear to be claims for defamation and intentional interference with prospective economic advantage. The Amended Complaint additionally contains a "Sixth Claim for Relief," which apparently rests on a theory of prima facie tort. (Amended Complaint, ¶ 50). Moreover, the Amended Complaint contains various diffuse claims which the plaintiff's opposition papers indicate are damages allegations rather than assertions of independent causes of action. (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, p. 3). The plaintiff's Amended Complaint therefore confines itself to attempting to state causes of action against both the individual and the corporate defendant under three different legal theories: defamation, intentional interference with prospective economic advantage, and prima facie tort. Defendants have moved to dismiss all three causes of action, as well as to strike certain portions of the Amended Complaint, pursuant to Fed.R.Civ.P. 12(f).[FN1] As discussed in greater detail below, defendants' motion is denied in part and granted in part.

> FN1. Because plaintiff has agreed to withdraw the disputed paragraphs of the Amended Complaint at this time, I need not further address the Rule 12(f) motion.

DISCUSSION

I. *Standard Applicable to a Motion to Dismiss*

In deciding this motion to dismiss, I must view the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 237 (1974); *Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555, 562 (2d Cir.1985). I must accept as true the factual allegations stated in the complaint, *Zinermon v. Burch,* 494 U.S. 113, 118 (1990), and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                     Page 3

Not Reported in F.Supp., 1997 WL 16066 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

draw all reasonable inferences in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993), *cert. denied,* 510 U.S. 1111 (1994). A motion to dismiss can only be granted if it appears beyond doubt that the nonmoving party can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In the present case, because it is clear that plaintiff can prove no set of facts in support of her claim of prima facie tort, that claim is dismissed, as are the claims against PGI. Because it does not appear at this preliminary stage that plaintiff can prove no set of facts in support of her claims of defamation and intentional interference with economic advantage against defendant Luben, the motion to dismiss is denied as to those claims.

II. *The Defamation Claim*

At various times, the parties have hinted that the stricter pleading rules of New York CPLR § 3016(a) may govern the plaintiff's defamation allegations in this case. Nevertheless, it is well-settled that a plaintiff pleading a defamation claim in a diversity case in federal court need only meet the more liberal standard of Fed.R.Civ.P. 8(a). *See Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986); *Ford v. Clement,* 834 F.Supp. 72, 78 (S.D.N.Y.1993), *aff'd,* 29 F.3d 621 (2d Cir.), *cert. denied,* 115 S.Ct. 449 (1994); *see also Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir.1980) ("[T]he mode of pleading defamation is governed by Rule 8, Fed.R.Civ.P."); *Reves v. Continental Equities Corp. of America,* 767 F.Supp. 469, 473 (S.D.N.Y.1991) ("Charges of libel and slander were formerly considered as vexatious in this circuit. Litigation for defamation was discouraged by a requirement that such contentions be set forth in considerable detail. Currently, the federal rules do not require such special pleading."). Under Rule 8(a), a plaintiff must plead a claim for defamation with adequate specificity to "afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Liquori v. Alexander,* 495 F.Supp. 641, 647 (S.D.N.Y.1980) (cited in *Kelly,* 806 F.2d at 46; *Ford,* 834 F.Supp.

at 78).

*3 Tasso's defamation claim meets the standard set by Rule 8. Although generally subject to more stern scrutiny, *see* 5 Wright & Miller, Federal Practice & Procedure § 1245, at 302, the sufficiency of a defamation claim must still be assessed within the liberal pleading context of Rule 8. The Amended Complaint at issue identifies defendant Luben as the person who made the statements alleged to be defamatory and describes the substance of the statements. (Amended Complaint, ¶¶ 17, 18, 22). While the Amended Complaint generally identifies the recipients of the defamatory communications as Tasso's colleagues and prospective clients, it is more specific with respect to Gold Corp. Moreover, in her Memorandum of Law in Opposition to the Motion to Dismiss, plaintiff goes still further and names Bruce Kaplan as the officer of Gold Corp. to whom Luben made the allegedly false statements and threats. (Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 2). Unfortunately, this information was not included in the Amended Complaint itself, the sufficiency of which is the subject of this motion. *See Telectronics Proprietary, Ltd. v. Medtronic, Inc.,* 687 F.Supp. 832, 836 (S.D.N.Y.1988) ("In considering a Rule 12(b)(6) motion, the court should confine its inquiry to the pleadings. A claim for relief 'may not be amended by the briefs in opposition to a motion to dismiss.' ").

The absence of an allegation specifically identifying the individual at Gold Corp. to whom Luben communicated the allegedly defamatory statements is not fatal to the Amended Complaint, however. Where, as here, the Amended Complaint is sufficiently detailed to enable the defendants to frame a defense, the action will not be dismissed. *See Sabatowski v. Fisher Price Toys,* 763 F.Supp. 705, 714 (W.D.N.Y.1991) ("Although the Complaint does not specify which agent(s) of defendant spoke the allegedly defamatory words and which agent(s) of defendant heard the words, this Court concludes that the Complaint is specific enough to enable defendant to respond and to raise the defense of res judicata and to afford defendant sufficient notice of the communications complained

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.     Page 4

Not Reported in F.Supp., 1997 WL 16066 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

of to enable [it] to defend [itself].") (internal citations, quotations and ellipses omitted).

I am unswayed by defendants' reliance on distinguishable caselaw. *See Bramesco v. Drug Computer Consultants,* 834 F.Supp. 120 (S.D.N.Y.1993) (dismissing claim "bereft of factual content," including defamation claim that alleged in toto that "I also believe [defendants] published falsehoods about me...."); *Ford,* 834 F.Supp. at 78 (dismissing a defamation claim that failed to allege when, by whom, and to whom defamatory statements were made); *Creed Taylor, Inc. v. CBS, Inc.,* 718 F.Supp. 1171 (S.D.N.Y.1989) (dismissing a defamation claim that was so vaguely worded " that the court cannot determine whether it is precluded on res judicata grounds."). Plaintiff's allegations of the defamatory statements made to Gold Corp. are sufficiently particular to survive a motion to dismiss and are certainly far more specific than the claims raised in the cases cited by defendants. *See Technology Consortium, Inc. v. Digital Communications Associates, Inc.,* 757 F.Supp. 197, 201 (E.D.N.Y.1991) (upholding a defamation claim where the complaint alleged " what the slander was, who said it, and approximately when it was said.").

*4 I note, however, that in assessing the sufficiency of the defamation claim, I must also look at whether the plaintiff has adequately pleaded that the statements took place within one year prior to the filing of the Complaint. *See Reeves,* 767 F.Supp. at 473 (dismissing a defamation claim that failed to allege that defamatory statements were made within one year before the commencement of the action). This analysis is particularly appropriate in light of the extensive discussion of the applicable statute of limitations that took place at the December 15, 1995 argument. The Amended Complaint requires some sifting through to determine the timeliness of the defamation claim. Paragraph 15, however, alleges that plaintiff began discussions with Gold Corp. on or about August 15, 1995 and that at that time Luben made the allegedly defamatory statements. Since the original Complaint was filed on or about November 15, 1994, it is clear that the action was timely commenced as to the statements directed to Gold Coast. Because the allegations with respect to these statements are also the only contentions that adequately specify the recipient of the defamatory statements, the defendants' motion to dismiss the defamation claim is denied. Henceforth, however, the basis for plaintiff's defamation claim will be limited to the statements allegedly made by Luben to representatives of Gold Corp., including Bruce Kaplan.[FN2]

> FN2. Defendants contend that the statements that plaintiff was "bitchy" and " incompetent" are statements of opinion that cannot form the basis of a defamation claim. *See Ansorian v. Zimmerman,* 627 N.Y.S.2d 706 (2d Dep't 1995). The majority of the statements at issue, however, are statements of fact which can support a defamation claim, including the statements that the plaintiff double billed for her services and that she dishonestly took credit for the work of others.

### III. *The Claim for Intentional Interference with Prospective Economic Advantage*

Plaintiff also asserts a claim for tortious interference with prospective economic advantage. This claim is integrally related to the plaintiff's defamation claim, as the interference is alleged to stem from Luben's defamatory statements to Gold Corp. New York courts have consistently held that claims ostensibly based on intentional interference with advantageous and contractual relations, but which in fact are based solely on damage to the pleader's reputation, are to be treated as defamation claims. *See, e.g., Ramsay v. Mary Imogene Bassett Hospital,* 495 N.Y.S.2d 282, 284 (3d Dep't 1985) (citations omitted), *appeal dismissed,* 502 N.Y.S.2d 1026 (1986). In the present case, although plaintiff's interference claim leans heavily on her defamation claim, it is not entirely subsumed by it.
In addition to alleging that defendants interfered with her prospective relationship with Gold Corp. by defaming her, plaintiff asserts that Luben also threatened to withhold all of PGI's business from Gold Corp. if Gold Corp. became a client of plaintiff. (Amended Complaint, ¶ 22). Because this claim extends beyond plaintiff's allegations of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1997 WL 16066 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

defamation, the adequacy of the intentional interference claim must be measured on its own terms.

To make out this claim, plaintiff must allege that defendants interfered with business or economic relations between the plaintiff and a third party, either (1) for the sole purpose of harming the plaintiff, or (2) by dishonest, unfair, or improper means. See *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 269 (2d Cir.1987); *Campo v. 1st Nationwide Bank,* 857 F.Supp. 264, 273 (E.D.N.Y.1994). At the December 15, 1995 argument, counsel and I discussed in detail the requirement that the plaintiff plead that the acts complained of were intended solely to injure the plaintiff rather than for any other legitimate purpose. Based on that extended discussion, I expected that plaintiff's Amended Complaint would contain the words, "defendants' acts were intended solely to injure the plaintiff and not for any legitimate purpose." Much to my surprise, these precise words are not present in the Amended Complaint. Evidently, the plaintiff preferred to leave that conclusion to the deductive powers of the reader of her Amended Complaint, since it is everywhere implied but nowhere expressed.

*5 Despite this inexplicable failure, the plaintiff has barely managed to state a viable claim for intentional interference with economic advantage. First, drawing all reasonable inferences in the plaintiff's favor, as I must, plaintiff's allegations in Paragraph 22 of the Amended Complaint that:
On or about August 15, while the Plaintiff was negotiating with the third party entity in connection with the business relationship described above *and for no other legitimate purpose,* the Defendant Luben began a course of conduct consisting of defamatory statements made publicly in such a way that a third party entity would find out about them and which *were intended to disrupt the Plaintiff's relationship with the third party* and which in fact did disrupt the relationship.... (emphasis added)

may be fairly read to meet the requirement.

Second, even if plaintiff had not successfully pleaded that defendants' interference was aimed solely at damaging her, she would be able to state a claim for tortious interference by asserting that the means employed by defendants were wrongful. See *Seven Star Shoe Co., Inc. v. Strictly Goodies, Inc.,* 657 F.Supp. 917, 920 (S.D.N.Y.1980). As the New York Court of Appeals has stated, examples of wrongful means in this context include: "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone." *Guard-Life Corp. v. S. Parker Hardware Mfg.,* 428 N.Y.S.2d 628, 632 (1980); see also *United Euram Corp. v. Occidental Petroleum,* 474 N.Y.S.2d 372, 375 (Sup.Ct.N.Y. County 1984) (holding that the " wrongful means" test was satisfied where a defendant's conduct involved more than a competitor's bid to secure a business advantage in that an attempt was made to deprive a competitor of an already earned share in a prospective contract).

In the present case, taking plaintiff's allegations as true, defendant clearly exercised a degree of economic pressure that went far beyond mere persuasion in inducing Gold Corp. not to become a client of plaintiff. In addition to making numerous allegedly defamatory statements, defendant Luben informed Gold Corp. that if it retained plaintiff as its public relations agent, it would not receive any business from PGI. Plaintiff has therefore adequately pleaded that defendants disrupted her prospective relationship with Gold Corp. by dishonest, unfair, or improper means. See *PPX Enterprises, Inc.,* 818 F.2d at 269. Defendants' motion to dismiss the claim for intentional interference is therefore denied.

IV. *The Prima Facie Tort Claim*

Because plaintiff has succeeded in stating claims for defamation and intentional interference, her prima facie tort claim must fail. See *Chen v. United States,* 854 F.2d 622, 628 (2d Cir.1988) ("[A] set of facts giving rise to a common-law tort is fatal to a prima facie tort claim."); *Grandome Enterprises, Inc. v. Stillman,* No. 92 Civ. 7525 (LAP), 1993 WL 119800, at *3 (S.D.N.Y. April 13, 1993) ("[O]nce a traditional tort is established the cause of action for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                         Page 6
Not Reported in F.Supp., 1997 WL 16066 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

prima facie tort disappears.") (citations omitted). Defendants' motion to dismiss the prima facie tort claim is therefore granted.

### V. *Liability of the Corporate Defendant*

*6 At the December, 1995 argument, I dismissed the claims against the corporate defendant in the original Complaint because of plaintiff's failure to plead that Luben's actions were in furtherance of the employer's business, as required to impose vicarious liability. The Amended Complaint contains some conclusory allegations apparently aimed at curing that defect, but still fails to allege the facts necessary to impose liability against PGI under the doctrine of *respondeat superior.*

Plaintiff's allegations regarding the corporate defendant's liability are contained in vague and sweeping statements, such as "defendant Luben with the aid and consent and acting under the authority of the Corporate Defendant willfully and viciously induced Gold Corp. to cease contact with the Plaintiff and to provide her with no further projects concerning the proposed offering by Gold Corp." (Amended Complaint, ¶ 24). Elsewhere in the Amended Complaint plaintiff alleges that Luben acted "with the willful knowledge and consent of the Corporate Defendant." (Amended Complaint, ¶ 31). Conspicuously absent are any allegations that Luben's actions in inducing Gold Corp. not to form a contract with plaintiff or in making public statements regarding plaintiff's professionalism and abilities were within the scope of his employment. In fact, the Amended Complaint notably fails even to allege Luben's job title and therefore I am unable to infer that his actions were a likely part of his job.

It is well-settled that an employer may be held vicariously liable for a tort committed by an employee in the course of the performance of his or her duties. See *Murray v. Watervliet City School Dist.,* 130 A.D.2d 830, 830, 515 N.Y.S.2d 150, 151 (3d Dep't 1987). Conversely, an employer is not subject to liability based upon "torts committed for personal motives unrelated to the furtherance of the employer's business." See *Island Associated Coop.*

*v. Hartmann,* 118 A.D.2d 830, 831, 500 N.Y.S.2d 315, 315 (2d Dep't 1986). The question, then, is the one that was discussed at length at the December, 1995 argument: were Luben's actions committed in furtherance of the employer's business or were they committed for unrelated personal motives of his own? Astonishingly, in light of that discussion, the Amended Complaint alleges no facts from which an inference can be drawn that Luben's actions with respect to Tasso and Gold Corp. were in furtherance of PGI's business. Instead, plaintiff appears to rely on a theory that PGI knew that defendant Luben had acted improperly with respect to plaintiff as well as other employees and independent contractors and, by doing nothing, condoned those improper actions. The cases cited in plaintiff's own Memorandum of Law, however, make clear that such allegations are insufficient to impose vicarious liability against PGI. *See, e.g., Murray,* 130 A.D.2d at 830 (explaining that the standard for imposition of *respondeat superior* liability is whether the tort committed by the employee was in furtherance of the employer's business); *Kharas v. Barron C. Collier, Inc.,* 157 N.Y.S. 410, 412 (1st Dep't 1916) ("The true rule, in my opinion, is that a corporation is liable for torts committed by its officers or agents when acting within the actual or implied scope of their employments, or by ratification may become responsible for such acts when committed in excess of their authority."). Because plaintiff has failed to allege that Luben was acting within the scope of his employment when he engaged in the conduct that forms the basis of the claims, the motion to dismiss the claims against PGI is granted.

### CONCLUSION

*7 For the foregoing reasons, the motion to dismiss is granted as to all claims against defendant PGI and granted as to the claim of prima facie tort against defendant Luben. The motion to dismiss the claims of defamation and intentional interference with prospective economic advantage against defendant Luben is denied.

Counsel for plaintiff and Mr. Luben shall appear at a conference on February 7, 1997 at 9:30 a.m. in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1997 WL 16066 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Courtroom 12A, 500 Pearl Street, New York, New York to discuss the anticipated progress of this case.

SO ORDERED.

S.D.N.Y.,1997.
Tasso v. Platinum Guild Intern.
Not Reported in F.Supp., 1997 WL 16066 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:94cv08288 (Docket) (Nov. 15, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.