# EXHIBIT B

Westlaw.

Slip Copy   Page 1
Slip Copy, 2006 WL 1126841 (D.D.C.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
Wendy TIEFENBACHER, Plaintiff,
v.
AMERICAN ASSOCIATION OF RETIRED PERSONS (AARP), Defendant.
**Civil Action No. 05-1802(CKK).**

April 27, 2006.

Lawrence Alex Thrower, Washington, DC, for Plaintiff.
Frank Charles Morris, Jr., Brian Wayne Steinbach, Epstein, Becker & Green, P.C., Washington, DC, for Defendant.

### MEMORANDUM OPINION

COLLEEN KOLLAR-KOTELLY, District Judge.

*1 On September 12, 2005, Plaintiff Wendy Tiefenbacher filed a Complaint against her former employer, AARP,[FN1] stemming from her termination from AARP the Magazine on August 8, 2003. Plaintiff, in her Complaint, alleges (1) retaliation pursuant to both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the District of Columbia Human Rights Act of 1977, D.C.Code § 2-1402; (2) violations of D.C. common law barring negligent training and supervision; and (3) intentional infliction of emotional distress. Defendant sought and received from this Court an extension of time to answer the Complaint; on December 19, 2005, Defendant filed an Answer with respect all counts except for Count III-the count in which Plaintiff alleges intentional infliction of emotional distress. Currently before this Court is Defendant's Motion to Dismiss Count III ("Def.'s Mot. to Dismiss"), also filed December 19, 2005. Plaintiff subsequently filed a Memorandum in Opposition to Defendant's Motion to Dismiss on January 14, 2006, ("Pl.'s Opp'n"), to which Defendant replied on January 27, 2006 ("Def.'s Reply"). Upon a searching examination of the pleadings and the relevant case law, the Court shall grant Defendant's Motion to Dismiss Claim III.

FN1. AARP notes in its Reply to Plaintiff's Complaint that it is no longer known as the American Association of Retired Persons. See Def.'s Reply at 1.

### I: BACKGROUND

Plaintiff's claims stem from events preceding her termination from AARP, where she was employed as a Director of Photography for AARP the Magazine (and its previous incarnations, Modern Maturity and MM). See Compl. ¶ 4. Plaintiff alleges that both she and her female staff were subjected to "obscene, crude, and sexually offensive statements" by her supervisor, Eric Seidman. Id. ¶¶ 6, 8, 13. According to Plaintiff, "Mr. Seidman also engaged in browbeating tactics, where he would call Ms. Tiefenbacher into his office [to] berate, belittle, and verbally abuse her." Id. ¶ 7. Plaintiff also contends that Mr. Seidman "sought to demean and humiliate her" while discussing Art Department matters in June 2003, when "[h]e exploded [by directing] demeaning, vulgar expletives at Ms. Tiefenbacher as a way of reinforcing his position and control over her." Id. ¶ 6.

She further claims that, although Steve Slon, Executive Editor of AARP Magazine, was aware of her concerns, he did nothing to remedy them and instead warned her "in a hostile and threatening matter" that she should discontinue complaining about Seidman's behavior or "look for another job," and that this left her "[f]eeling humiliated and shocked ... physically shaken and distraught." Id. ¶¶ 6, 9, 10, 11. Moreover, Plaintiff contends that Seidman and Carl Lehman Haupt, the Group Design Director at AARP Magazine "verbally attempted to browbeat her and coerce her to resign," gave her a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy   Page 2
Slip Copy, 2006 WL 1126841 (D.D.C.)
**(Cite as: Slip Copy)**

negative review intended to pressure her into resigning, and that she "became the victim of derision" when it became known that she intended to seek counsel due to her allegations. *Id.* ¶¶ 12, 13, 14. Finally, Plaintiff claims that her termination was retaliatory and based on pretense. *Id.* ¶¶ 1, 18, 19. According to Plaintiff, "[r]ather than treating her like a professional that had made major contributions to the AARP Magazine and other publications, she was treated like a common criminal" when terminated. *Id.* ¶ 18.

### II: LEGAL STANDARDS

*2 In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.,* 854 F.Supp. 914, 915 (D.D.C.1994); *see also Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged ."). While the court must construe the Complaint in the Plaintiff's favor, it "need not accept inferences drawn by the plaintiff[ ] if such inferences are not supported by the facts set out in the complaint." *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC,* 132 F.3d 753, 762 (D.C.Cir.1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See EEOC v. St. Francis Xavier Parochial Sch.,* 117 F.3d 621, 624 (D.C.Cir.1997); *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy,* 29 F.3d 682, 688 (D.C.Cir.1994); *cf. Behrens v. Pelletier,* 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (when a motion to dismiss is based on the complaint, the facts alleged in the complaint control).

### III: DISCUSSION

In its Motion to Dismiss, Defendant asserts that Plaintiff failed to allege in her Complaint facts sufficient to support a claim of intentional infliction of emotional distress. *See* Def.'s Mot. to Dismiss at 1. Specifically, Defendant argues that Plaintiff fails to make a legally sufficient showing that: (1) the Defendant engaged in extreme or outrageous conduct; (2) the Defendant's conduct was intentional or reckless; or (3) the Plaintiff experienced severe emotional distress. *See id.* at 4-9. Plaintiff asserts in response that the facts alleged in the Complaint, if true, are sufficient to support a claim of intentional infliction of emotional distress, *see* Pl.'s Opp'n at 4-6, which Defendant denies, *see* Def.'s Reply at 4-6.

In order to prove an intentional infliction of emotional distress claim, the "plaintiff must show (1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Duncan v. Children's Nat'l. Med. Ctr.,* 702 A.2d 207, 211 (D.C.1997) (quoting *Drejza v. Vaccaro,* 650 A.2d 1308, 1312 (D.C.1994)). "There is no general duty of care to avoid causing mental distress, and liability is not imposed for all conduct which causes mental distress." *Id.* (citing *Dist. of Columbia v. Thompson,* 570 A.2d 277, 290 (D.C.1990) (citation omitted), *modified,* 593 A.2d 621 (D.C.1991)). Rather, a claim for intentional infliction of emotional distress must be founded upon acts "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Homan v. Goyal,* 711 A.2d 812, 818 (D.C.1998) (citation omitted); *see also* Restatement (Second) of Torts § 46 cmt. d (1965). "If that standard means what it says, then the conduct alleged must truly be extraordinary to hold a defendant accountable for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                    Page 3
Slip Copy, 2006 WL 1126841 (D.D.C.)
**(Cite as: Slip Copy)**

this tort." *Carey v. Edgewood Mgmt. Corp.,* 754 A.2d 951, 956 (D.C.2000); *see also Larijani v. Georgetown Univ.,* 791 A.2d 41, 46 (D.C.2002) (noting that the tort of intentional infliction of emotional distress has "proof requirements as severe as any in our law"); *Waldon v. Covington,* 415 A.2d 1070, 1076 (D.C.1980) (liability for intentional infliction of emotional distress does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"). "And to survive a Rule 12(b)(6) motion, 'the allegations of the complaint must afford a basis for concluding that [the plaintiff] may be able to prove conduct of the required enormity.' " *Larijani,* 791 A.2d at 45 (quoting *Carey,* 754 A.2d at 956) (emphasis deleted).

*3 Ultimately, the definition of extreme and outrageous conduct is dependent on "the prevailing norms of society." *King v. Kidd,* 640 A.2d 656, 668 (D.C.1993). Typically, conduct is extreme or outrageous when "the recitation of the facts to an average member of the community would arouse his [or her] resentment against the actor, and lead him [or her] to exclaim, 'Outrageous!' " *Id.* Moreover, the court must consider the context of the conduct, including "the nature of the activity, the relationship between the parties, and the particular environment in which the conduct took place." *Id.*

Evaluating Plaintiff's complaint in the light most favorable to her, and resolving all factual doubts and inferences to her benefit, it is evident to this Court that Plaintiff's claims fail to establish a set of facts under which she could successfully prove a claim of intentional infliction of emotional distress. As a preliminary matter, Plaintiff makes several allegations that the Defendant was aware of the complained-of conduct, and does successfully satisfy the second prong of the intentional infliction of emotional distress test at this stage-i.e., the requirement that Plaintiff prove that AARP acted intentionally or recklessly. Specifically, Plaintiff asserts that: (1) Mr. Slon, the Executive Editor of AARP Magazine, heard about Plaintiff's employment concerns and aggressively confronted Plaintiff about them rather than helping her solve them, *see* Compl. ¶¶ 6, 9-11; (2) an unnamed AARP Human Resources employee told Plaintiff that her allegations of inappropriate conduct were being investigated, *see id.* ¶ 16; (3) she had discussions with Hugh Delehanty, former Executive Editor-in-Chief of AARP magazine, about her allegations of inappropriate conduct, *see id.* ¶¶ 7, 17; and (4) she wrote and released to management a detailed response to a negative review she received which included her allegations of inappropriate behavior, *id.* ¶¶ 15, 17. If these allegations are true, Plaintiff can demonstrate that AARP was at least recklessly responsible for the complained-of conduct.

However, Plaintiff's claim fails due to her inability to meet the first prong of the relevant test-i.e., the requirement that the alleged conduct be sufficiently "extreme and outrageous" to constitute intentional infliction of emotional distress. As noted, the bar Plaintiff must meet to establish extreme or outrageous conduct is high; "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not legally extreme or outrageous. *King,* 640 A.2d at 668. This is especially so in the context of an employer-employee relationship. In the employment context, courts within the District of Columbia "traditionally have been demanding in the proof required to support an intentional infliction of emotional distress claim." *Kerrigan v. Britches of Georgetowne, Inc.,* 705 A.2d 624, 628 (D.C.1997) (citing examples); *see also Duncan,* 702 A.2d at 212 ("generally, employer-employee conflicts do not rise to the level of outrageous conduct").

*4 Plaintiff's Complaint accuses various individuals at AARP of: (1) "demeaning and humiliating her" by directing at her "demeaning, vulgar expletives," Compl ¶ 6; (2) "engag[ing] in browbeating tactics where" Plaintiff "would [be] berate[d], belittle[d], and verbally abuse[d]," *id.* ¶ 8; (3) making " obscene, crude, and sexually offensive statements" in Plaintiff's presence, *id.;* (4) warning Plaintiff to cease making complaints "in a hostile and threatening manner" that caused Plaintiff to feel " humiliated," "shocked," "physically shaken and distraught," *id.* ¶¶ 10, 11; (5) spreading news of Plaintiff's choice to contact counsel such that she " became the victim of derision," *id.* ¶ 12; and (6) terminating Plaintiff without "an exit interview,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 4
Slip Copy, 2006 WL 1126841 (D.D.C.)
**(Cite as: Slip Copy)**

severance, or her three weeks vacation pay" and escorting her from the building "like a common criminal," *id.* ¶ 18. Taking these allegations as true and providing Plaintiff all due inferences, it is clear that this alleged conduct-while rude, callous, and insensitive-is simply insufficient to meet the " extreme and outrageous" requirements necessary to sustain an intentional infliction of emotional distress claim.

Three considerations are in order. First, "[m]ere discharge of an employee is not 'conduct that goes beyond all possible bounds of decency and [is] regarded as atrocious and utterly intolerable in a civilized society.' " *Elliott v. Healthcare Corp.,* 629 A.2d 6, 9 (D.C.1993) (quoting *Schoen v. Consumers United Group, Inc.,* 670 F.Supp. 367, 379 (D.D.C.1986)); *see also Smith v. Union Labor Life Ins. Co.,* 620 A.2d 265, 270 (D.C.1993) (employee's dismissal without prior disciplinary procedures does not meet the standard for the tort of intentional infliction of emotional distress) (citations omitted); *Crowley v. N. Am. Telecomm. Ass'n,* 691 A.2d 1169, 1172 (D.C.1997) (same).

Second, when a plaintiff contends that his or her emotional distress consists entirely of the defendant's acts of discrimination in the Title VII context, courts within this jurisdiction have consistently held "that dismissal of the intentional tort claim is warranted because the conduct and the injury complained of are subsumed by Title VII." *Jackson v. Am. Chem. Soc'y,* 812 F.Supp. 239, 243 (D.D.C.1993); *see also Green v. Am. Broad. Co.,* 647 F.Supp. 1359, 1363 (D.D.C.1986) (citing *Stewart v. Thomas,* 538 F.Supp. 891, 896 (D.D.C.1982)) ("To the extent that plaintiff's claim results from a stressful work situation created by defendants' alleged acts of discrimination, it is subsumed within her discrimination claim."); *Weiss v. Int'l Bhd. of Elec. Workers,* 729 F.Supp. 144, 147 (D.D.C.1990) (similar).

Third, in employer-employee cases, the District of Columbia Court of Appeals has refused to impose intentional infliction of emotion distress liability for conduct similar to or even far more outrageous than that alleged by Plaintiff in her Complaint. *See Kerrigan,* 705 A.2d at 628 (dismissal of claim where plaintiff alleged that employer "targeted him for a sexual harassment investigation, manufactured evidence against him in order to establish a false claim of sexual harassment, leaked information from the investigation to other employees, and unjustifiably demoted him to the position of store manager in order to promote a woman to his position"); *Crowley,* 691 A.2d at 1172 (dismissing claim where plaintiff alleged that he "was subjected to contempt, scorn and other indignities in the workplace by his supervisor and an unwarranted evaluation and discharge"); *King,* 640 A.2d at 670-74 (finding conduct not extreme and outrageous when supervisor failed repeatedly to respond to employee's sexual harassment complaints); *Hoffman v. Hill & Knowlton, Inc.,* 777 F.Supp. 1003, 1005 (D.D.C.1991) (finding conduct not outrageous when employer intentionally interfered with employee's ability to do job; stated false, pretextual reasons for dismissing an employee knowing it would be communicated to others; and dismissed employee); *Thompson,* 570 A.2d at 290 (holding that a pattern of criticism and misrepresentation coupled with an alleged assault of employee and subsequent termination does not constitute outrageous conduct); *Waldon,* 415 A.2d at 1077-78 (finding conduct not outrageous when employer refused to give employee-professor keys to laboratory and notice of department meetings, threatened to begin actions to test competency with aim to terminate, and assigned employee classes outside speciality knowing it would cause difficulty and embarrassment).

*5 Ultimately, given (1) the stringent standards necessary to satisfy an intentional infliction of emotional distress claim, (2) the fact that wrongful discharge or retaliation alone is insufficient to sustain such a claim, (3) the subsuming effect of Title VII on additional claims of intentional infliction of emotional distress for claims arising out of alleged workplace discrimination, and (4) the existence of a long line of cases within this jurisdiction denying intentional infliction of emotional distress claims in similar or more egregious circumstances, the Court concludes that-taking the facts alleged in Plaintiff's Complaint as true and providing her with the benefit of all due inferences-that Plaintiff cannot establish a claim for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 5
Slip Copy, 2006 WL 1126841 (D.D.C.)
**(Cite as: Slip Copy)**

intentional infliction of emotional distress. As such, the Court shall grant Defendant's Motion to Dismiss Count II of Plaintiff's Complaint.

### IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's Motion to Dismiss Count III, Plaintiff's intentional infliction of emotional distress claim. An appropriate Order accompanies this Memorandum Opinion.

D.D.C.,2006.
Tiefenbacher v. American Ass'n of Retired Persons
Slip Copy, 2006 WL 1126841 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 354625 (Trial Motion, Memorandum and Affidavit) Reply in Support of Motion to Dismiss Count III (Jan. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 354624 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss Count III of the Claim (Jan. 14, 2006) Original Image of this Document (PDF)
• 1:05cv01802 (Docket) (Sep. 12, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.